ARIEL PIERRE CALONNE (SBN 110268)
City Attorney
City of San Buenaventura
501 Poli Street
Ventura, California 93002-0099
Telephone:  (805) 654-7818
Facsimile:  (805) 641-0253
acalonne@ci.ventura.ca.us

NOSSAMAN LLP
BYRON GEE (SBN 190919)
bgee@nossaman.com
MARY LYNN COFFEE (SBN 145605)
mlcoffee@nossaman.com
ROBERT C. HORTON (SBN 235187)
rhorton@nossaman.com
445 South Figueroa Street, Suite 3100
Los Angeles, CA  90071
Telephone:  (213) 612-7800
Facsimile:  (213) 612-7801

E-FILED 3/30/2012

Attorneys for Defendant CITY OF SAN BUENAVENTURA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WISHTOYO FOUNDATION/VENTURA COASTKEEPER<br><br>Plaintiff, and<br><br>HEAL THE BAY, INC.<br><br>Plaintiff-Intervenor,<br><br>vs.<br><br>CITY OF SAN BUENAVENTURA,<br><br>Defendant. | Case No.: CV 10-02072-GHK (PJWx)<br><br>**[~~PROPOSED~~] TERTIARY TREATED FLOWS CONSENT DECREE AND STIPULATED DISMISSAL**<br><br>Complaint served:  March 26, 2010<br>Current response date: February 13, 2012 |

315753

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

The following [Proposed] Tertiary Treated Flows Consent Decree and Stipulated Dismissal ("TTFs Consent Decree") is entered into by and among plaintiff Wishtoyo Foundation/Ventura Coastkeeper ("Ventura Coastkeeper"), plaintiff-intervenor Heal the Bay, Inc. ("Heal the Bay"), and defendant City of San Buenaventura ("City" or "Ventura").  The entities entering into this TTFs Consent Decree are each referred to herein as a "Party" and collectively as "Parties."  All initially capitalized terms used in this document, including the Recitals of this document, are defined as set forth in Part II of this TTFs Consent Decree.

## RECITALS

**WHEREAS**, Ventura Coastkeeper is a program of the Wishtoyo Foundation, a non-profit public benefit corporation.  Ventura Coastkeeper's mission is to protect, preserve, and restore the ecological integrity and water quality of Ventura County's inland water bodies, coastal waters and watersheds.  The Wishtoyo Foundation's mission is to preserve, protect and restore Chumash culture, the culture and history of the coastal communities, cultural resources and the environment.

**WHEREAS**, the City is a municipal corporation that owns and operates the public sewer system and wastewater reclamation plant for Ventura and is the permittee under the NPDES Permit.

**WHEREAS**, Heal the Bay is a 501(c)(3) nonprofit environmental organization whose mission is to make Southern California coastal waters and watersheds, including Santa Monica Bay, safe, healthy and clean.

**WHEREAS,** on January 5, 2010, Ventura Coastkeeper provided the City, the Administrator and the Regional Administrator for Region IX of EPA, the Executive Director of the State Board, and the Executive Officer of the Regional Board with the Notice Letter.

**WHEREAS,** on March 23, 2010, Ventura Coastkeeper, as plaintiff, filed the Complaint in the District Court against Ventura, as defendant, pursuant to the citizen suit provision of the CWA, 33 U.S.C. § 1365, alleging, among other Claims, discharges of

Effluent from the VWRF to the wildlife/polishing treatment ponds and then to the Estuary in violation of the CWA, Porter-cologne, and the NPDES Permit requirements and effluent limitations.

**WHEREAS,** the District Court entered the SSOs Consent Decree on November 23, 2010 resolving and dismissing all of Ventura Coastkeeper's Claims for the City's alleged violations of law stemming from its alleged sanitary sewer system overflows from its sewer collection system (*i.e.*, sanitary sewer overflow related Claims alleged in the Notice Letter and/or in Claims III through V, inclusive, of the Complaint, and all documents reference therein), and granted leave to the Parties for additional negotiation and/or litigation of Ventura Coastkeeper's remaining TTFs Claims.

**WHEREAS,** this TTFs Consent Decree will resolve all of Ventura Coastkeeper's remaining Claims under the Complaint (*i.e.,* the TTFs Claims), including all alleged violations of law stemming from the City's alleged improper discharges of tertiary treated effluent from the Ventura Water Reclamation Facility to wildlife/polishing ponds and then to the Estuary in violation of the CWA, Porter-Cologne, and/or applicable effluent limitations and NPDES Permit requirements.

**WHEREAS**, on April 4, 2008, Heal the Bay filed with the California State Water Resources Control Board Administrative Petition for Review No. A-1927(a) challenging the Regional Board's adoption of the NPDES Permit permitting discharges of tertiary treated effluent from the Ventura Water Reclamation Facility to wildlife/polishing ponds and then to the Estuary under the CWA, Porter-Cologne, and other applicable laws.

**WHEREAS**, Heal the Bay has requested, and the State Board has granted, a series of abeyances to stay adjudication of its Administrative Petition to allow Heal the Bay, the City, and Ventura Coastkeeper to reach a resolution of all Claims and issues raised in Heal the Bay's Administrative Petition, and to address all related concerns about the operation of the Ventura Water Reclamation Facility.

/ / /

/ / /

**WHEREAS**, Heal the Bay's Claims in its Administrative Petition share common questions of fact with the TTFs Claims, and Heal the Bay has an interest in the resolution of the remaining TTFs Claims in this litigation.

**WHEREAS**, in light of Heal the Bay's interest in the settlement, resolution and dismissal with prejudice of the TTFs Claims and this litigation, Heal the Bay, Ventura Coastkeeper, and the City have filed the Stipulation for Limited Intervention and [Proposed] Limited Intervention Order requesting that Heal the Bay be granted status as a plaintiff-intervenor for limited purposes in this litigation, solely at the remedies phase, and solely with respect to the remaining TTFs Claims, and only for purposes of participating as a Party to this TTFs Consent Decree.

**WHEREAS**, the District Court has granted and entered the Stipulation for Limited Intervention and Limited Intervention Order, and Heal the Bay is a plaintiff-intervenor in the litigation.

**WHEREAS**, the City denies each allegation that it has violated the CWA, Porter-Cologne, the NPDES Permit, and/or any other law, regulation or permit as alleged in the Complaint or Administrative Petition, and denies that any of the allegations in the Complaint and Administrative Petition have any merit, and further denies that it failed to perform its duties under the CWA, the NPDES Permit, Porter-Cologne, the Statewide Waste Discharge Requirements for Sanitary Sewer Systems –State Water Resources Control Board Order No. 2006-0003, and any other applicable law, and generally denies it has liability to Ventura Coastkeeper, Heal the Bay, or any other citizen or citizen groups arising from its ownership and operation of the City's sanitary sewer system and VWRF.

**WHEREAS,** the Parties, through their authorized representatives and without either adjudication of the Claims of Ventura Coastkeeper's Complaint or Heal the Bay's Administrative Petition, and without admission by the City of any alleged Claim, violation or other wrongdoing, have agreed to settlement, dismissal and release of all pending and/or remaining Claims asserted in, or arising from this litigation, the

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

Complaint and the Administrative Petition, and have agreed to release of certain other Claims of those Parties as set forth in this TTFs Consent Decree without further protracted litigation.

**WHEREAS**, the Parties believe that to further their shared commitment to protecting the ecology of the Estuary and its watershed, and to proactively commence planning and implementation for environmentally protective, sustainable, and integrated water supply and wastewater discharge practices, the City needs to develop, over time, one or more yet-to-be identified infrastructure options for Ventura's reclamation and diversion of an ecologically appropriate volume of its Effluent.

**WHEREAS**, although the Construction Implementation Constraints and Operational Implementation Constraints are not yet fully identified, studied, documented, or resolved, the Parties agree that it is appropriate for the City to engage now in the process to identify, select, plan, design, engineer, environmentally review, permit, and, ultimately, construct one or more technically, financially, and regulatorily feasible reclamation and diversion infrastructure projects, including Treatment Wetlands, with the goal of achieving the cumulative capacity to divert and eliminate 100% of the Effluent from Direct Discharge to the Estuary (with a first priority for diversion to Water Reclamation Uses) so that the VWRF can implement, by December 31, 2025, Effluent diversions that result in a discharge regime that is determined to be, and permitted by the Resources Agencies as the most ecologically beneficial for the Estuary.

**WHEREAS,** the Parties acknowledge that for the City in the future to best adaptively manage the volume of Effluent discharges and diversions from Direct Discharge, the City must strive to develop capacity to divert 100% of the Effluent from Direct Discharge and to reclaim the maximum feasible amount of this Effluent for beneficial reuse.

**WHEREAS**, the Parties agree that, taking into account and subject to Construction Implementation Constraints, the reclamation and diversion infrastructure projects

/ / /

constructed on the Time Schedule shall consist of a combination of projects that have the capacity required by the Design Considerations, and can:

    1.    as a first priority, divert on an ongoing basis the Maximum Feasible Diversion Volume to broadly defined Water Reclamation Uses as a first and best use of the Effluent; and

    2.    as a second priority, divert Effluent to Treatment Wetlands, in the event that 100% reclamation is infeasible due to Construction Implementation Constraints or Operational Implementation Constraints, and so long as such diversion remains consistent with the Approved Effluent Diversions as determined by the Resource Agencies.

**WHEREAS**, the Parties agree that, subject to Construction Implementation Constraints and Operational Implementation Constraints, upon the construction of the Diversion Infrastructure Project(s), the City shall implement the Approved Effluent Diversions by the expiration of the Time Schedule, so long as the Approved Effluent Diversions are not Financially Infeasible, Technically Infeasible, or Regulatorily Infeasible.

**WHEREAS,** the Parties agree that all actions taken by the City pursuant to this TTFs Consent Decree shall be in compliance with all applicable federal, state and local laws, rules and regulations.

**WHEREAS**, for purposes of settlement only, the Parties waive all objections that they may have to the District Court's jurisdiction to establish and retain jurisdiction over the Parties, the TTFs Claims (until they are dismissed with prejudice by the District Court pursuant to the terms and conditions of this Consent Decree), and/or this TTFs Consent Decree (*See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)).

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties each hereby agree as follows:

/ / /

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

# I.  GENERAL PURPOSES AND OBJECTIVES

1. The purposes and objectives of this TTFs Consent Decree are:

    a. For the City to engage now in the process to identify, select, plan, design, engineer, environmentally review, permit, and, ultimately, construct on the Time Schedule, one or more Diversion Infrastructure Projects, including Treatment Wetlands, with the goal of achieving the cumulative capacity to divert and eliminate, subject to the Design Considerations, 100% of the Effluent from Direct Discharge to the Estuary (with a first priority for diversion to Water Reclamation Uses and a second priority for diversion to Treatment wetlands) so that the VWRF can implement, by December 31, 2025, Effluent diversions that result in a discharge regime that is determined to be, and is permitted by the Resources Agencies as the most ecologically beneficial for the Estuary; and

    b. To further the City's water supply conservation and reclamation goals; and

    c. To ensure that the City uses, implements, manages and improves ways, means, and methods of discharging Effluent to prevent violations of, and to fully comply with or exceed the requirements of, the CWA, Porter-Cologne, CESA, ESA, the City's relevant municipal codes, and any other applicable laws, regulations and permits related to discharges of the Effluent.

2. Accordingly, the Parties agree that, so long as the City is implementing the terms and conditions of this TTFs Consent Decree and is not in violation hereof, it is the intent of this TTFs Consent Decree that the City will maintain full compliance with requirements of the CWA, Porter-Cologne, CESA, ESA, the NPDES Permit, the City's relevant municipal codes, and any other applicable laws, regulations and permits related

/ / /

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

to the discharge of Effluent from the VWRF, such that no cause of action against the City would be available to other citizen suit or other third-party plaintiffs under such laws.

3.   The terms and conditions of this TTFs Consent Decree have been developed and agreed to by the Parties taking into account the current and unique circumstances of the City, including the condition and configuration of the City's existing sanitary sewer and wastewater treatment facilities and infrastructure, the City's exemplary commitment to the maintenance and operation of the VWRF, and its past and ongoing in-depth technical and scientific studies of the hydrology, ecology, groundwater, and biological resources of the Estuary to achieve improved water quality in the region and to further enhance designated beneficial uses of the Estuary.  Accordingly, the terms and conditions of this TTFs Consent Decree are solely applicable to the City and shall not establish a precedent for other permittees under other NPDES permits, or for other sanitation, sanitary sewer or wastewater treatment agencies.

## II.   DEFINITIONS

Unless otherwise expressly defined herein, terms used in this TTFs Consent Decree, including the [Proposed] Dismissal Order, that are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes, regulations or rules.  Whenever terms listed below are used in this TTFs Consent Decree, including [Proposed] Dismissal Order,

4.   the following definitions apply:

a.   **"ACOE"** means the United States Army Corps of Engineers, or any regulatory agency that is a successor to ACOE.

b.   **"Administrative Petition"** means the currently pending Administrative Petition for Review of Los Angeles Regional Water Quality Control Board Action of Adopting Order No. R-4-2008-0011, SWRCB Petition No. A-1927(a), which Heal the Bay filed with the SWRCB on April 4, 2008.

/ / /

315753

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

c. **"Agencies with Jurisdiction"** means, CDFG, RWQCB, ACOE, NMFS, USFWS, and other governmental agencies or their regulatory agency successors with jurisdiction to environmentally review, consult with respect to, certify, approve, condition, or otherwise permit Diversion Infrastructure Projects, components thereof, the elimination of Direct Discharge, and/or the implementation of alternative discharges of Effluent to new or different locations or uses.

d. **"Annual Rate Cap"** means a 3% increase in any one year during the Time Schedule.

e. "**Annual Report**" means that report prepared by the City pursuant to the terms and conditions of Paragraph 28 of this TTFs Consent Decree.

f. **"Approved Effluent Diversions"** means that volume or flow of Effluent diversion permitted and approved for diversion from Direct Discharge to the Estuary by the Resources Agencies pursuant to Paragraph 23 of this Agreement.

g. **"Breakdown Situations"** means any temporary event occurring after construction of the Diversion Infrastructure Projects and implementation of Effluent diversions that is beyond the City's reasonable control and that precludes the City from diverting Effluent, or materially reduces the volume of Effluent that may be diverted from Direct Discharge, such as:

    i. an Event of Force Majeure;

    ii. a rainfall event or series of events exceeding the Five-Year 24-Hour Storm Event or the Five-Year 30-Day Storm Event such that diversion of Effluent to the constructed Diversion Infrastructure Projects is precluded, and/or the potential for inundation of the VWRF facilities creates a material risk that a VWRF treatment unit process may be bypassed; and/or

/ / /

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

iii. any mechanical failure of facilities, equipment or processes, whether operated by the City or by other water districts or users to whom the City may transfer Effluent, required to implement diversions of Effluent from Direct Discharge or to the Water Reclamation Uses and/or Treatment Wetlands.

h. **"CDFG"** means the California Department of Fish and Game, or any regulatory agency that is a successor to CDFG.

i. "**CESA**" means the California Endangered Species Act Cal. Fish & Game Code §§ 2050-2097.

j. **"City"** means the City of San Buenaventura, a California chartered City.

k. **"Claim"** means any legal, administrative, judicial or other claim, charge, demand, cause of action, challenge, lawsuit, petition, appeal, or other request for remedy of any kind or nature, at law or in equity, including, without limitation, those for violations of law or regulation, or for injunctive relief, declaratory relief, specific performance, damages, penalties, fines, sanctions, fees, costs, expenses, or monetary sums of any kind.

l. "**Complaint**" means that certain complaint, filed in the District Court by Ventura Coastkeeper, as plaintiff, against the City, as defendant, commencing this legal action, Case No. CV 10-02072-GHK (PJWx), against the City.

m. **"Construction Implementation Constraints"** means, as applicable, the occurrence(s) of any of the following in a manner that precludes, prevents or impedes the City's construction of the Diversion Infrastructure Project(s) by the Time Schedule specified in this TTFs Consent Decree or the achievement of the Effluent diversions required

/ / /

315753

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

by this TTFs Consent Decree:  1) Technical Infeasibility, 2) Financial Infeasibility, and/or 3) Regulatory Infeasibility.

n.    **"CWA"** means the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et. seq.*

o.    **"Day"** means a calendar day.  In computing any period of time under this TTFs Consent Decree, where the last day of such period is a Saturday, Sunday, Federal or State or City holiday or City furlough day, the period runs until the close of business on the next day that is not a Saturday, Sunday, Federal or State or City holiday, or City furlough day.

p.    **"Debt Service"** means the interest and other costs of bond issuance which must be paid to finance the Total Net Investment in specified types of City sewer related capital projects, but, to eliminate "double counting" of the same capital investment amount as both Total Net Investment and again as Debt Service, excludes the amount of the bond principal to be repaid to debt holders, which amount is already "counted" as the Total Net Investment in infrastructure and capital projects.

q.    "**Design Considerations**" means that the capacity for reclamation and diversion infrastructure project(s) is designed to accept the total combined flow or volume of Effluent and rainfall during a Five Year 24-Hour Storm Event, and a Five-Year 30-Day Storm Event, except during Maintenance, Health and Safety Situations or Breakdown Situations.

r.    **"Direct Discharge"** means any discharge of Effluent to the Estuary from the VWRF or the VWRF's existing wildlife/polishing ponds, excluding those discharges of Effluent to the Estuary from Treatment Wetlands that are approved by the Resources Agencies, and that are otherwise conducted pursuant to the terms of this TTFs Consent Decree,

315753

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

1  which discharges of Effluent to the Estuary may be permitted as set

2  forth herein.

3  s.   **"District Court"** means the United States District Court for the Central

4  District of California, in which this legal action, Case No. CV 10-

5  02072-GHK (PJWx), is pending.

6  t.   **"Diversion Infrastructure Project"** or **"Diversion Infrastructure**

7  **Projects"** means those reclamation and diversion infrastructure

8  project(s), including the Treatment Wetlands, that cumulatively will

9  have the capacity, taking into account and subject to the Design

10  Considerations, Construction Implementation Constraints, and

11  Operational Implementation Constraints, to divert to Water Reclamation

12  Uses and/or Treatment Wetlands the Maximum Feasible Diversion

13  Volume.

14  u.   **"Effective Date"** means the date defined in Paragraph 18 of this TTFs

15  Consent Decree.

16  v.   **"Effluent"** means current and future anticipated VWRF tertiary treated

17  sewage effluent, which also constitutes recycled water.

18  w.   **"EPA"** means the United States Environmental Protection Agency, or

19  any regulatory agency that is a successor to EPA.

20  x.   "**ESA**" means the federal Endangered Species Act, 16 U.S.C. §§ 1531-

21  1544.

22  y.   **"Estuary"** means the Santa Clara River Estuary.

23  z.   **"Event of Force Majeure"** is an event which renders the City's

24  compliance with this TTFs Consent Decree impossible, despite the

25  timely and reasonable efforts of the City, due to circumstances beyond

26  the control of the City or its agents, and which could not have been

27  reasonably foreseen and prevented by the exercise of due diligence by

28  the City.  Any delays or failure to properly perform as required by this

TTFs Consent Decree due to the City's failure to make timely and bona fide applications and to exercise reasonable and diligent efforts to comply with the terms in this TTFs Consent Decree, or due to normal inclement weather events taken into account by the Design Considerations, shall not, in any event, be considered to be an Event of Force Majeure.

aa.   **"Event of Implementation Constraint or Disagreement"** means that one or more Parties believe that any one of the following has occurred: (1) a Construction Implementation Constraint; or (2) an Operational Implementation Constraint, or (3) a disagreement among the Parties regarding an the terms and conditions of this TTFs Consent Decree, including, a disagreement regarding: (i) the existence, extent or effect of, or the appropriate response to a Construction Implementation Constraint, or an Operational Implementation Constraint; (ii) the appropriate Maximum Feasible Diversion Volume; (iii) the appropriate Time Schedule or extension to a Time Schedule (including, without limitation, extensions to a Time Schedule and/or other dues dates to address any tolling period related to implementation of informal or formal dispute resolution proceedings as provided for in this TTFs Consent Decree); (iv) the existence, extent or effect of, or appropriate response to a Rate Rejection; (v) the appropriate Maximum Ecologically Protective Diversion Volume; or (vi) any other disagreement regarding the interpretation or implementation of the terms of this TTFs Consent Decree.

bb.   **"Event of Implementation Constraint, Disagreement, or Breach"** means that one Party believes that one of the following has occurred: (a) an Event of Implementation Constraint or Disagreement, or (b) a violation or breach by a Party of the TTFs Consent Decree.

cc.   **"Financial Infeasibility"** or **"Financially Infeasible"** means:

i.   that the increment of revenue needed to fund the Total Net Investment and Debt Service for the planning, design, engineering, environmental review, permitting, construction, and implementation of only the Diversion Infrastructure Projects and/or Effluent diversions will necessitate a total increase in the City's base cost of service sewer fees and/ or sewer rate of more than the Annual Rate Cap; or.

ii.   the sum of the revenues needed for: (a) the City's sewer-related operations, management and maintenance duties, (b) the Total Net Investment and Debt Service for planning, design, engineering, environmental review, permitting, construction, and implementation of the City's adopted Capital Improvement Plan and Sewer Master Plan projects, and (c) the Total Net Investment and Debt Service for planning, design, engineering, environmental review, permitting, construction, and implementation of the Diversion Infrastructure Projects and/or Effluent diversions, together cumulatively require total net expenditures by the City that necessitate total average annual base cost of service sewer fees and/or a sewer rate at any time during the Time Schedule exceeding the Median Income Cap; or

iii.   the Total Net Investment needed for the planning, design, engineering, environmental review, permitting, construction, and implementation of the Diversion Infrastructure Projects and/or Effluent diversions exceeds the Net Investment Cap.

dd.   **"Five-Year 24-Hour Storm Event"** means that amount of total rainfall generated from a rain event or series of rain events occurring over the

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

course of a 24-hour period that, on average based on the historical rainfall records, occurs only once every five years.

ee.  **"Five-Year 30-Day Storm Event"** means that amount of total rainfall generated from a series of rain events occurring over the course of a 30-Day period that, on average based on the historical rainfall records, occurs only once every five years.

ff.  **"Heal the Bay"** means Heal the Bay, Inc., a 501(c)(3) nonprofit organization.

gg.  **"Legal or Regulatory Action"** means any action, ruling, permit, certification, or approval, or any provision, term, effluent limitation, or other condition thereof, or any other similar regulatory requirement adopted or issued, and enforceable by an Agency with Jurisdiction or a court with jurisdiction.

hh.  **"Maintenance, Health and Safety Situations"** means any temporary event occurring after construction of the Diversion Infrastructure Projects and implementation of Effluent diversions that precludes the City from diverting Effluent, or materially reduces the volume of Effluent that may be diverted from Direct Discharge, due to either (1) the creation by normal operations of a threat to public health and safety that is beyond the City's reasonable control, and/or (2) the need to implement maintenance, repairs, safety measures or capital improvements to assure the proper continued operation of the Diversion Infrastructure Projects, such as:

i.  An inability to divert Direct Discharge or deliver Effluent to Water Reclamation Uses and/or the Treatment Wetlands that may be foreseen, but is unavoidable because any of the facilities, equipment, or processes (whether operated by the City or by other water districts or users to whom the City

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

may transfer Effluent) diverting Effluent to the Water Reclamation Uses and/or Treatment Wetlands must be "offline" for emergency or scheduled maintenance, repair, replacement, capital upgrades, implementation of safety measures or similar types of work; or

 ii. An inability to deliver Effluent to Water Reclamation Uses and/or the Treatment Wetlands arising due to an Event of Force Majeure that occurs despite the City's reasonable diligence, and creates a credible risk of causing a discharge, spill, or release resulting in a nuisance, or adverse impacts to public health, safety, or the environment.

ii. **"Maximum Ecologically Protective Diversion Volume"** means the maximum volume or flow of Effluent appropriate to divert from Direct Discharge that is ecologically protective of the Estuary, the Estuary's aquatic species, and the Estuary watershed, which volume or flow shall be conclusively established for purposes of this TTFs Consent Decree as set forth in Paragraph 23.c., or, if disagreement arises in the process set forth in Paragraph 23.c, the volume or flow shall be conclusively established by way of the meet-and-confer process set forth in Paragraph 26, or, if necessary, by way of formal dispute resolution as set forth in Paragraph 27.a. of this TTFs Consent Decree.

jj. **"Maximum Feasible Diversion Volume"** means a minimum average annual volume or flow of Effluent, that can be diverted from Direct Discharge, which should be comprised of no less than 50% of the VWRF total average annual Effluent volume and up to 100% of its total average annual Effluent volume, unless and except to the extent that such diversions are infeasible due to Construction Implementation Constraints, in which case "Maximum Feasible Diversion Volume"

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

shall mean the greatest average annual volume or flow of Effluent that can be directed to Water Reclamation Uses and is not Technically Infeasible, Regulatorily Infeasible, or Financially Infeasible.

kk.    **"Median Income Cap"** means 1.2% of the City's annual median household income measured at any time during the Time Schedule.  The City's median household income shall be determined by the statistics for the City of San Buenaventura published by the U.S. Census Bureau. The current URL for these statistics is: http://quickfacts.census.gov/gfd/states/06/0665042.html.

ll.    **"Memorandum of Settlement"** means the Memorandum of Agreement Regarding Settlement Terms executed by the Parties in August 2011.

mm.    **"Net Investment Cap"** means Fifty Five Million Dollars ($55,000,000), increased on the date of calculation of the financial cap by the same percentage as the percentage increase in the Engineering Record News Construction Cost Index occurring between the Effective Date and the date of calculation.

nn.    **"NMFS"** means the National Marine Fisheries Service (also known as the National Oceanic and Atmospheric Administration's Division of Fisheries), or any regulatory agency that is a successor to NMFS.

oo.    "**Notice Letter"** means that certain Notice of Violation and Intent to File Suit issued by Ventura Coastkeeper under Section 505(b) of the Federal Water Pollution Control Act ("Clean Water Act" or "CWA"), 33 U.S.C. § 1365(b), on January 5, 2010.

pp.    "**Notice of Petition Dismissal"** means a notice to be filed with the District Court by Heal the Bay prior to the District Court's consideration or entry of any of the Settlement Documents pursuant to Part VIII of this TTFs Consent Decree, which notice shall establish with certainty that

/ / /

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

Heal the Bay has dismissed with prejudice all Claims of its Administrative Petition.

qq. **"NPDES"** means National Pollutant Discharge Elimination System, as defined in the CWA.

rr. "**NPDES Permit**" means that certain *Waste Discharge Requirements for City of San Buenaventura Water Reclamation Facility*, NPDES Permit No. CA 0053651, and Order No. R4-2008-0011 issued by the RWQCB, together with any time schedule orders issued by the RWQCB in conjunction therewith, and any renewal, revision, or replacement thereof, or any superseding Order, NPDES permit, or associated time schedule orders.

ss. **"Operational Implementation Constraints"** means, as applicable, the occurrence(s) of any of the following in a manner that precludes or impedes the City's operation of the Diversion Infrastructure Projects or the achievement of the Effluent diversions per the Design Considerations and as required by this TTFs Consent Decree by or after the Time Schedule specified in this TTFs Consent Decree: 1) Technical Infeasibility; 2) Financial Infeasibility; 3) Regulatory Infeasibility; 4) Breakdown Situations; or 5) Maintenance, Health and Safety Situations.

tt. **"Parties"** means collectively the City, Ventura Coastkeeper, and Heal the Bay.

uu. **"Party"** means, individually, the City, Ventura Coastkeeper, or Heal the Bay.

vv. **"Porter-Cologne"** means the California Porter-Cologne Water Quality Control Act, California Water Code §§ 13000 *et seq.*

ww. **"[Proposed] Dismissal Order"** means the proposed Court Order, which is agreed to by the Parties, attached to this TTFs Consent Decree, and incorporated herein by reference, approving this TTFs Consent Decree,

and releasing and dismissing the TTFs Claims and the Complaint with prejudice.

xx.  **"[Proposed] Limited Intervention Order"** means the proposed Court Order, which is agreed to by the Parties, attached to this TTFs Consent Decree, and incorporated herein by reference, approving the Stipulation for Limited Intervention and granting Heal the Bay status as a plaintiff intervenor in this legal action, Case No. CV 10-02072-GHK (PJWx), for the limited purposes set forth in the Stipulation for Limited Intervention.

yy.  **"Rate Rejection"** means ratepayers succeed in any challenge to, or otherwise successfully legally prevent (pursuant to provisions of the California Constitution or otherwise), the City's rate increases or revenue measures necessary to finance the Diversion Infrastructure Projects and/or Effluent diversions as required by, and consistent with, the terms and conditions of this TTFs Consent Decree.

zz.  **"Regulatory Infeasibility"** or **"Regulatorily Infeasible"** means the failure to secure from Agencies with Jurisdiction the necessary approvals or permits needed to comply with the TTFs Consent Decree despite the City's timely and reasonable efforts to do so.

aaa.  **"Required Agency Permit"** or **"Required Agency Permits"** means one or all of the legally required environmental reviews, consultations, permits, certifications and other approvals (including, but not limited to Waste Discharge Requirements pursuant to California Water Code section 13000 *et seq.*, any NPDES permit or permits pursuant to Clean Water Act sections 402 and/or 404, incidental take authorization pursuant to the CESA, incidental take authorization pursuant to section 7 or section 10 of ESA) that must be issued by any one of the Agencies with Jurisdiction to lawfully implement Diversion Infrastructure Projects, or components thereof, or Effluent diversions or alternative

315753

19

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

1  discharges of Effluent to new or different locations or uses and/or as
2  necessary to reduce or eliminate Direct Discharges.

3  bbb. **"Resources Agencies"** means USFWS, CDFG, NMFS, RWQCB and
4  all other governmental agencies with jurisdiction to environmentally
5  review, consult with respect to, certify, approve, condition or otherwise
6  permit diversions from Direct Discharge, and/or alternative discharges
7  of Effluent to new or different locations or uses, or any regulatory
8  agency successors to those agencies.

9  ccc. **"Regional Board"** or "**RWQCB**" means the California Regional Water
10  Quality Control Board, Los Angeles Region, or any regulatory agency
11  that is a successor to the RWQCB.

12  ddd. **"Scheduled Maintenance, Health and Safety Situations"** means any
13  Maintenance, Health and Safety Situations that are anticipated, are
14  within the control of the City, and can be scheduled to occur during a
15  certain time period by the City.

16  eee. "**Settlement Documents**" means, collectively, the Stipulation for
17  Limited Intervention, the [Proposed] Limited Intervention Order, this
18  TTFs Consent Decree, and the ]Proposed] Dismissal Order.

19  fff. **"SSOs Consent Decree"** means the Consent Decree and Stipulated
20  Dismissal entered by the District Court in this Case No. CV 10-02072-
21  GHK (PJWx).

22  ggg. "**State Board**" or **"SWRCB"** means the California State Water
23  Resources Control Board, or any regulatory agency that is a successor to
24  the SWRCB.

25  hhh. **"Stipulation for Limited Intervention"** means the [Proposed]
26  Stipulation And Request For Limited Intervention Of Heal The Bay
27  Pursuant To Fed. R. Civ. P. Rule 24(b)(2), which is agreed to by the
28  Parties, and lodged concurrently and incorporated by this reference,

315753

20

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

accepting the intervention of Heal the Bay in this legal action, Case No. CV 10-02072-GHK (PJWx), only at the remedies stage, and solely for purposes of participating in this TTFs Consent Decree, and further requesting District Court consideration and entry of the [Proposed] Order for Limited Intervention only on the terms and conditions set forth therein and in Part VIII of this TTFs Consent Decree.

iii. **"Technical Infeasibility"** or **"Technically Infeasible"** means that construction of the Diversion Infrastructure Project(s) by the Time Schedule specified by this TTFs Consent Decree is not possible despite the City's reasonable efforts due to engineering, physical, environmental, or other technical problems beyond the City's reasonable control.

jjj. **"Termination Date"** means the date defined in Paragraph 19 of this TTFs Consent Decree.

kkk. **"Time Schedule"** means on or before January 1, 2025, or by such later date established as set forth in Paragraphs 26 and/or 27, as applicable.

lll. **"Total Net Investment"** means the total capital investment (*i.e.,* the bond principal amount) that is needed for planning, design, engineering, environmental review, permitting, construction, and implementation of the applicable activities or infrastructure, after offsetting or crediting the total capital investment or bond principal required by: all revenues generated from grants or state revolving fund loans; proceeds from the sales of Effluent diversions or the rights to reclaimed Effluent; and/or other revenues available for sewage and reclamation system expenses or capital investments generated from other non-ratepayer sources of funding realized by the City.

mmm. **"Treatment Wetlands"** means natural treatment systems other than the existing wildlife/polishing ponds, constructed in uplands and/or as a

1    retrofit of the wildlife/polishing ponds, which shall be designed,

2    engineered, and constructed such that, in combination with VWRF

3    upgrades to plant treatment unit processes, Effluent discharged from the

4    natural treatment systems to receiving waters: (i) shall not contain

5    nitrate in concentrations greater than 4.0 mg/L as a monthly average;

6    and (ii) shall otherwise comply with the terms and conditions of all

7    applicable Required Agency Permits, including the applicable NPDES

8    permit.

9    nnn.   "**TTFs Claims**" means, collectively, those Claims in this litigation

10    remaining after the settlement embodied in the SSOs Consent Decree

11    for those single and/or continuing discharge related violations alleged by

12    Ventura Coastkeeper in the Notice Letter and/or pursuant to Claims I

13    and II of the Complaint, inclusive, and the documents referenced

14    therein, arising from March 22, 2007 up to and through the Termination

15    Date of this TTFs Consent Decree, stemming from the alleged improper

16    discharge of Effluent from the VWRF to the wildlife/polishing ponds

17    and then to the Estuary in violation of the CWA, the NPDES Permit,

18    Porter-Cologne, any other applicable NPDES permit requirements and

19    effluent limitations, and any other legal or equitable Claims otherwise

20    arising from, or related to such Claims.

21    ooo.   "**TTFs Consent Decree**" means this [Proposed] Tertiary Treated Flows

22    Consent Decree and Stipulated Dismissal, including the [Proposed]

23    Dismissal Order, settling, releasing, and dismissing with prejudice

24    Ventura Coastkeeper's TTFs Claims, the Complaint and all Claims of

25    Heal the Bay in the Administrative Petition, and releasing certain other

26    Claims of those Parties as set forth herein.

27    ppp.   "**USFWS**" means the United States Fish and Wildlife Service, or any

28    regulatory agency that is a successor to the USFWS.

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

qqq.   **"Ventura"** means the City.

rrr.   **"Ventura Coastkeeper"** means Wishtoyo Foundation's Ventura Coastkeeper Program, Wishtoyo Foundation being a 501(c)(3) nonprofit organization and the plaintiff that filed the Complaint.

sss.   **"VWRF"** means the Ventura Water Reclamation Facility and all equipment, storage, and other infrastructure used by City to treat sanitary sewage located downstream of the headworks to such facility until its point of discharge.

ttt.   **"Water Reclamation Uses"** means diversion or delivery of Effluent to uses to improve or enhance beneficial uses (as defined under Porter Cologne and designated in the Regional Board's Water Quality Control Plan (Basin Plan)) or otherwise for purposes of improving conservation of, providing supply in lieu of, or offsetting use of, other designated sources of state, regional, or local water supply, including, without limitation, urban landscape irrigation, agricultural irrigation, groundwater injection, groundwater percolation or recharge, groundwater injection to combat sea water intrusion, delivery to, and provision of water to another agency for any of the foregoing uses, and/or diversion or delivery of Effluent to enhance water conservation or for other appropriate uses, such as once-through cooling for power plants.

uuu.   **"Year"** shall mean a calendar year, unless otherwise specified.

### III.   JURISDICTION AND VENUE

5.     Ventura Coastkeeper contends that the District Court has jurisdiction over the subject matter of the TTFs Claims pursuant to section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), and 28 U.S.C. §§ 1331 and 2201, and that 28 U.S.C. § 1367(a), provides supplemental jurisdiction for certain related Claims based on other

/ / /

federal and state laws, including, but not limited to, ESA, CESA, California Code of Civil Procedure § 1085, and Porter-Cologne.

6. Ventura Coastkeeper contends that venue for the TTFs Claims is proper in the District Court pursuant to section 505(c) of the Clean Water Act, 33 U.S.C. § 1365(c), and 28 U.S.C. §§ 1391(b) and (c).

7. Ventura Coastkeeper contends that the Complaint filed by Ventura Coastkeeper states claims for which relief can be granted pursuant to section 505 of the Clean Water Act, 33 U.S.C. § 1365.

8. Ventura Coastkeeper contends that it has standing to bring this action.

9. For purposes of settlement, the Parties agree to limited intervention in this litigation by Heal the Bay pursuant to the Stipulation for Limited Intervention and [Proposed] Limited Intervention Order. Accordingly, the Parties waive all objections that they may have to the District Court's jurisdiction over the Parties. For purposes of this Settlement, the Parties further agree to, and waive all objections they may have to the District Court's jurisdiction over the TTFs Claims, and its retained jurisdiction over the terms and conditions of this TTFs Consent Decree during the term of the TTFs Consent Decree. Pursuant to the [Proposed] Limited Intervention Order and [Proposed] Dismissal Order, the District Court shall retain jurisdiction over all Parties and over this matter for purposes of interpreting, modifying or enforcing the terms of this TTFs Consent Decree, for the term of this TTFs Consent Decree, or for as long thereafter as is necessary for the District Court to resolve any motion to enforce, or resolve any dispute arising under this TTFs Consent Decree. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994).

## IV.   EFFECT OF TTFs CONSENT DECREE

10. The Parties agree that, so long as the City is implementing the terms and conditions of this TTFs Consent Decree and is not in violation hereof, it is the intent of this TTFs Consent Decree that the City will be in full compliance with, or exceed the requirements of the CWA, Porter-Cologne, CESA, ESA and other applicable federal,

state, and local laws, regulations, and permits issued thereunder.  Notwithstanding the Parties' intent, nothing in this TTFs Consent Decree limits in any way the obligations of the City to comply with all federal, state, and local laws and regulations governing diversions or discharges of Effluent or any activities required by this TTFs Consent Decree, and all requirements and conditions of the Required Agency Permits.

11.   This TTFs Consent Decree is not a permit or modification of any existing permits under any federal, state, or local law, and in no way relieves the City of its responsibilities to obtain any Required Agency Permits and to comply with, all applicable federal, state, and local laws and regulations.

12.   Nothing in this TTFs Consent Decree, and no City action pursuant to this TTFs Consent Decree shall constitute evidence of, or be construed as a finding, adjudication, acknowledgement, or admission by the City of, or with respect to, any fact, finding, issue of law, legal defense, or violation of law, regulation, permit, or administrative order.

13.   This TTFs Consent Decree and/or any payment or other action pursuant to this TTFs Consent Decree may constitute evidence against the City only in actions seeking to enforce compliance with this TTFs Consent Decree.

## V.   APPLICABILITY

14.   The provisions of this TTFs Consent Decree address, resolve, and provide for the release and dismissal with prejudice of the TTFs Claims, the Complaint, all Claims of the Administrative Petition for Review, and grant a general release and waiver of certain other Claims of those Parties, including those future Claims as set forth in Part IX of this TTFs Consent Decree.  The provisions of this TTFs Consent Decree apply to and bind Ventura Coastkeeper, Heal the Bay, and the City, including each Party's directors, employees, owners, members, agents, representatives, shareholders, servants, contractors, consultants, successors, assigns, and legal affiliates.

15.   Each of the undersigned representatives of the Parties certifies that he/she is fully and legally authorized by the Party to enter into this TTFs Consent Decree, to

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

execute it on behalf of the indicated Party, and to legally bind the represented Party to its terms.  In any action to enforce this TTFs Consent Decree, no Party shall raise as a defense the failure by any of its directors, employees, owners, members, agents, representatives, shareholders, servants, contractors, consultants, successors, assigns, or legal affiliates to take actions necessary to comply with this TTFs Consent Decree.

16.     The Parties, including each Party's directors, employees, owners, members, agents, representatives, shareholders, servants, contractors, consultants, successors, assigns, and legal affiliates, agree to be bound by this TTFs Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.  In entering into this TTFs Consent Decree, the City denies liability for any purpose as to any allegation or matter arising out of the Notice Letter, the Complaint, and/or the Administrative Petition.

17.     No change in structure, ownership, corporate,  or other legal status of any Party, nor any transfer of the assets or liabilities of any Party, shall in any way alter the responsibilities of such Party under this TTFs Consent Decree, including the responsibilities of its directors, employees, owners, members, agents, representatives, shareholders, servants, contractors, consultants, successors, assigns, and legal affiliates.

## VI.   EFFECTIVE DATE AND TERMINATION DATE

18.     The term "Effective Date," as used in this TTFs Consent Decree, means and shall be the first date that all requirements of 40 C.F.R. § 135.5 have been satisfied, and the District Court has entered the Settlement Documents as set forth in Part VIII below, including the TTFs Consent Decree and [Proposed] Dismissal Order releasing and dismissing with prejudice the TTFs Claims and the Complaint.

19.     This TTFs Consent Decree shall terminate on, and the Termination Date of this TTFs Consent Decree means and shall be the earlier of the following dates: (a) the last date of the period in which the City has commenced operation of the Diversion Infrastructure Projects and operated the projects for five (5) years; or (b) the last date of the period in which the City has commenced operation of the Diversion Infrastructure

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

Projects and operated the projects for three (3) years in a manner that has achieved zero Direct Discharge (other than any Direct Discharges occurring due to Breakdown Situations or Maintenance, Health and Safety Situations).

## VII.   TERMS AND CONDITIONS

20.   **City Goals and Obligations Regarding Design and Capacity of Diversion Infrastructure Projects; Construction Implementation Constraints**.

a.   **The City's Infrastructure Design and Construction Goals.**  The City's infrastructure design and construction goals shall be to identify, select, plan, design, engineer, environmentally review, permit, and construct on the Time Schedule Diversion Infrastructure Projects that have the capacity required by the Design Considerations, and that shall cumulatively have the capacity to:

i.   eliminate 100% of the average annual volume or flow of Direct Discharges; and

ii.   divert a minimum of 50%, and up to 100%, of the average annual volume or flow of Effluent to Water Reclamation Uses.

The Parties acknowledge, however, that the City's infrastructure design and construction goals may not ultimately be achieved on the Time Schedule due to the Construction Implementation Constraints or an Event of Force Majeure.

b.   **The City's Infrastructure Construction Obligation**. The City shall, on the Time Schedule, identify, select, plan, design, engineer, environmentally review, permit, and construct reclamation and diversion infrastructure projects, including the Treatment Wetlands, that have the capacity required by the Design Considerations, and, unless and except to the extent precluded, prevented, or impeded by the Construction Implementation Constraints or an Event of Force Majeure, that cumulatively have the capacity to:

27

i. as a first priority, divert on an ongoing basis the Maximum Feasible Diversion Volume to Water Reclamation Uses; and

ii. as a second priority, divert Effluent to the Treatment Wetlands, in the event that 100% diversion to Water Reclamation Uses is Technically Infeasible, Regulatorily Infeasible, or Financially Infeasible.

21. **The City's Diversion Implementation Obligations.**  Upon issuance of all Required Agency Permits, the City shall, by the expiration of the Time Schedule, operate the Diversion Infrastructure Projects that the City constructs to implement the Approved Effluent Diversions, subject to occurrence(s) of Operational Implementation Constraints. From and after the implementation of diversions, the Parties agree that the City may temporarily discharge Effluent to the Estuary, in the event of the occurrence of any Operational Implementation Constraints, subject to the limitations of this TTFs Consent Decree.  Notwithstanding the foregoing, in the event that the terms and conditions of any Required Agency Permit are materially inconsistent with the terms and conditions of this TTFs Consent Decree (*e.g.,* a Required Agency Permit makes a determination that the volume or flow of Approved Effluent Diversions will be materially less than the Maximum Ecologically Protective Diversion Volume, requires the City to perform before the expiration of the Time Schedule, or otherwise fails to take a Construction Implementation Constraint or an Operational Implementation Constraint into account), the Parties each reserve, and shall have the right to challenge and/or seek to remedy the terms and conditions of the Required Agency Permit as set forth in Paragraph 35.b.i. of this TTFs Consent Decree, so long as such Party is otherwise in compliance with its obligations under Paragraphs 23.c., 23.d., 23.e. and 35.a. of this TTFs Consent Decree. Further, no Party shall be in violation of this TTFs Consent Decree or have any liability hereunder as solely a result of implementing any Required Agency Permits as issued by the applicable Agencies with Jurisdiction, or for properly exercising the Party's rights to / / /

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

1  challenge Required Agency Permits to make such permits consistent with the terms and

2  conditions of this TTFs Consent Decree.

3          a. **Limitations Related To Scheduled Maintenance, Health and Safety**

4           **Situations.** The City shall assure that all Scheduled Maintenance, Health

5           and Safety Situations that the City plans and implements shall occur

6           during the period between December 1 and April 1 of each Year.

7          b. **Limitations on Treatment Wetlands Bypass.** If second priority

8           diversions of Effluent to the Treatment Wetlands are constructed and

9           implemented, then, after construction of the Treatment Wetlands, in the

10           event that 1) Breakdown Situations, or 2) Maintenance, Health and

11           Safety Situations occur that preclude the City from diverting Effluent

12           from Direct Discharge to Water Reclamation Uses, but do not impact

13           diversions to the Treatment Wetlands, the City shall first divert the

14           Effluent to the Treatment Wetlands, and the City shall only allow a

15           Direct Discharge if: (i) the Treatment Wetlands do not have the capacity

16           to accept the additional Effluent despite being built in accordance with

17           the Design Considerations, or (ii) the Breakdown Situation or

18           Maintenance, Health and Safety Situation precludes, prevents, or

19           impedes diversions of Effluent to, or the capacity, treatment, or other

20           operations of, the Treatment Wetlands.

21      22.  **Meet and Confer Obligations.** Upon a Notice under Paragraph 26 by the

22  City that any Event of Force Majeure, Construction Implementation Constraints, or

23  Operational Implementation Constraints preclude or impede timely implementation of the

24  City's construction or diversion obligations under this TTFs Consent Decree, the Parties

25  shall be required to meet and confer as set forth in Paragraph 26 below to evaluate and

26  determine an appropriate way to address and resolve the City's claim made in such

27  Notice, and the action to be taken to address such claim, which action may include,

28  without limitation, extending the City's Time Schedule for completion of the City's goals

315753

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

and obligations under this TTFs Consent Decree. If the Parties are unable to reach agreement with respect to that action to be taken to address a claim of an Event of Force Majeure or occurrence of any Construction Implementation Constraints or Operational Implementation Constraints pursuant to the "meet and confer" provisions in Paragraph 26 of this TTFs Consent Decree, then, and only then, any Party may seek formal dispute resolution as set forth in Paragraph 27 below to determine an appropriate way to address such claim.

      a.   **Effect of Event of Force Majeure, Construction Implementation Constraints, or Operational Implementation Constraints .** In the event that any Construction Implementation Constraint or Event of Force Majeure occurs that impedes, prevents, or precludes completion of Diversion Infrastructure Projects by the Time Schedule, the City shall not be liable for breach of the TTFs Consent Decree. In addition, in the event that any Operational Implementation Constraint occurs that impedes, prevents, or precludes the City from achieving 100% of the Approved Effluent Diversions, the City shall not be liable for breach of the TTFs Consent Decree. At the same time, the occurrence of these events shall not relieve the City completely of its obligations under this TTFs Consent Decree to construct Diversion Infrastructure Projects and/or to implement Effluent diversions that are agreed to or determined to be appropriate for the City to implement pursuant to Paragraphs 26 and/or 27.

23.   **Planning and Regulatory Permits and Proceedings.**

      a.   **Infrastructure Alternatives and Schedule.** By December 31, 2015, the City agrees to conduct all preliminary studies and complete such other tasks as are necessary to identify alternatives for the Diversion Infrastructure Projects that the City will study for implementation, and shall prepare a schedule for completing: (i) planning, engineering, and

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

environmental review of the alternatives, (ii) selection of a preferred alternative, (iii) submission of applications for the Required Agency Permits necessary to implement the preferred alternative, (iv) project-level design and engineering work for the preferred alternative, and (v) construction of the preferred alternative.

b.  **Permit Applications.** The City agrees to notify Ventura Coastkeeper and Heal the Bay in writing, no later than August 1, 2018, which Required Agency Permits the City intends to apply for.  The City shall submit draft applications for Required Agency Permits to Ventura Coastkeeper and Heal the Bay by August 1, 2018.  Ventura Coastkeeper and Heal the Bay shall have until September 1, 2018 to submit their written comments on the draft applications to the City.  The City then shall have until October 1, 2018 to respond to Ventura Coastkeeper's and Heal the Bay's comments and/or provide an explanation of why it is addressing the comments in an alternative manner.  Subject to any delays created by the exercise with respect to applications for Required Agency Permits by any Party of its rights under Paragraphs 26 and/or 27, the City agrees to complete and submit applications for Required Agency Permits needed for construction and operation of the Diversion Infrastructure Projects selected as the preferred alternative under Paragraph 23.a. by no later than January 1, 2019.  The City's applications for Required Agency Permits from the Resources Agencies shall request issuance of those permits by a date no later than January 1, 2020, containing terms and conditions that are consistent with the terms and conditions of the TTFs Consent Decree, and permitting the following activities:

i.  Subject to the Construction Implementation Constraints and the Operational Implementation Constraints, and by expiration of the

/ / /

315753

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

Time Schedule, development, construction, and operation of the Diversion Infrastructure Projects;

ii.  Subject to the Construction Implementation Constraints and the Operational Implementation Constraints, and by expiration of the Time Schedule, authority to implement diversions and eliminate Direct Discharge of the Maximum Ecologically Protective Diversion Volume; and

iii. Subject to the Construction Implementation Constraints and the Operational Implementation Constraints, and by expiration of the Time Schedule, authority to commence diversions from Direct Discharge of the Maximum Ecologically Protective Diversion Volume, as a first priority, to Water Reclamation Uses and, as a second priority, to Treatment Wetlands.

c.  **Determination of the Maximum Ecologically Protective Diversion Volume.**  By no later than January 1, 2018, the Parties agree to mutually determine, using the best available scientific information and as a part of the planning, design, engineering, and environmental review process, the Maximum Ecologically Protective Diversion Volume.  In the event that the Parties are unable to reach mutual agreement regarding the Maximum Ecologically Protective Diversion Volume on or before January 1, 2018, then the Parties shall proceed with dispute resolution as set forth in Paragraphs 26 and/or 27.a. to reach a determination that is binding on the Parties regarding the Maximum Ecologically Protective Diversion Volume, which the City shall then include in its applications for Required Agency Permits as set forth in Paragraph 23.b.

d.  **City Representations to Agencies with Jurisdiction.**  In all its applications for the Required Agency Permits, the City agrees to inform and request that the Agencies with Jurisdiction approve, adopt, issue,

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

and/or grant Required Agency Permits on all terms and conditions necessary for:

    i.  the City to have the ability to achieve its goals for construction of Diversion Infrastructure Project capacity as set forth in Paragraph 20.a.;

    ii.  the City to fulfill its obligations for design and construction of Diversion Infrastructure Projects as set forth in Paragraph 20.b.; and

    iii. the City to obtain all Required Agency Permits to implement and operate the Diversion Infrastructure Projects in accordance with its obligations in Paragraph 21 above, to the extent that resulting Approved Effluent Diversions are consistent with eliminating from Direct Discharge the Maximum Ecologically Protective Diversion Volume.

e.  **Cooperation.** The City, Ventura Coastkeeper, and Heal the Bay shall each, individually and jointly, cooperate to advocate and support the issuance of the Required Agency Permits containing terms and conditions that are consistent with this TTFs Consent Decree, including, without limitation, achievement, subject to the Construction Implementation Constraints and the Operational Construction Constraints, and by the expiration of the Time Schedule, of the Effluent diversion and reclamation goals and obligations of this TTFs Consent Decree.

f.  **Schedule for Obtaining Permits.** The City shall timely submit applications pursuant to Paragraph 23.b., and use all diligent and reasonable efforts to obtain the Required Agency Permits by January 1, 2020; provided however, that if any Required Agency Permits that are no longer subject to administrative or judicial invalidation are not available

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

for the Diversion Infrastructure Projects and/or Effluent diversions by January 1, 2021, then the Parties shall meet and confer to determine if the unavailability of any certain and valid Required Agency Permit is likely to preclude, prevent, or impede the City's implementation of Diversion Infrastructure Projects and/or Effluent diversions by the expiration of the Time Schedule, in which case the City shall not be liable for breach of the TTFs Consent Decree due to Regulatory Infeasibility.  At the same time, the failure to receive by January 1, 2021 a Required Agency Permit that is no longer subject to legal or administrative invalidation shall not relieve the City completely of its obligations to construct Diversion Infrastructure Projects and implement Effluent diversions as set forth in this TTFs Consent Decree, and the Parties shall meet and confer, as set forth in Paragraphs 26 and/or 27, to determine any extension of the Time Schedule required, and/or otherwise how best to respond to the unavailability of a certain and valid Required Agency Permit.

24.    **Sewer and/or Water Revenue Measures.**  The City shall use all reasonable efforts to adopt required sewer and/or water revenue measures, including, without limitation, rate increases, as necessary to comply with its obligations set forth in this TTFs Consent Decree.  In the event that, despite the City's reasonable efforts to adopt required sewer or water revenue measures as necessary to fund compliance with this TTFs Consent Decree, the ratepayers or other parties with standing prevail in a Rate Rejection, then the Parties shall meet and confer as set forth in Paragraphs 26 and/or 27 to address the Rate Rejection.  In addition to the Parties' obligations under this Paragraph to meet and confer regarding any Rate Rejection, in the event of any Rate Rejection, the Parties acknowledge that Ventura Coastkeeper and Heal the Bay may also assert a legal challenge to, or otherwise contest, the Rate Rejection, and may seek a ruling from the District Court invalidating the Rate Rejection on grounds that it is in conflict with federal law on the grounds that the installation, construction, implementation, and operation of

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

1  the Diversion Infrastructure Projects and Effluent diversions required by this TTFs

2  Consent Decree are undertaken to advance, improve, and serve the purposes of the City's

3  compliance with the CWA. *Bylinski v. City of Allen Park*, 8 F. Supp. 2d 965, 969-70

4  (E.D. Mich. 1998), *aff'd Bylinski v. City of Allen Park*, 169 F.3d 1001 (6th Cir. 1999),

5  *cert. denied.*  The City shall not oppose challenges to Rate Rejections asserted by Ventura

6  Coastkeeper and/or Heal the Bay.

7       25.    **Participation and Cooperation:** The Parties shall use all reasonable efforts

8  to cooperate with one another in implementing the TTFs Consent Decree, and shall

9  actively and diligently participate in, advocate, and use reasonable efforts to support the

10 following proceedings as necessary for compliance with the TTFs Consent Decree:

11             a.  **Settlement Related Communications.**  Ventura Coastkeeper and Heal

12                 the Bay each shall cooperate with the City to jointly prepare, review,

13                 determine the content of, and disseminate all external public

14                 communications regarding the terms and conditions of this TTFs Consent

15                 Decree and the Claims dismissed and released hereby, including, without

16                 limitation, any sewer and water revenue measures necessary to

17                 implement the terms and conditions of this TTFs Consent Decree.

18                 Without limiting the Parties' obligations to cooperate under this

19                 Paragraph, Ventura Coastkeeper and Heal the Bay each agrees to provide

20                 the City, at least twenty-four (24) hours prior to release or response, the

21                 content of the following types of external written communications

22                 regarding the terms and conditions of this TTFs Consent Decree and the

23                 Claims dismissed and released hereby:  press releases, press articles,

24                 public notices and postings, external written communications, public

25                 reports, public comments and responses, requests for interviews,

26                 responses, or comments received from the media, and communications

27                 with Agencies with Jurisdiction.

28 / / /

b. **Permitting.** The Parties shall cooperate with respect to initiation, implementation, and conclusion of all consultation, permitting, certification, and approval proceedings with the Agencies with Jurisdiction to obtain valid Required Agency Permits that are consistent with this TTFs Consent Decree on or before January 1, 2020, subject to any delays associated with any Party exercising its rights under Paragraphs 26 and/or 27, as applicable.

c. **Studies.** The Parties shall cooperate with respect to, and shall actively participate as stakeholders in, the preparation of the Phase 2 Recycled Water Market Study, and any other phase 2 and phase 3 studies, or amendments or addenda to any studies prepared for the City's submission to the RWQCB or any other Agencies with Jurisdiction that are consistent with the terms and conditions of this TTFs Consent Decree, the NPDES Permit requirements, and any additional requirements imposed by the RWQCB or other Agencies with Jurisdiction.

d. **Infrastructure and Diversions.** The Parties shall cooperate with respect to, and shall actively participate as stakeholders in, the planning, design, environmental review and approval, permitting, construction, and operation of the Diversion Infrastructure Projects and Effluent diversions to eliminate Direct Discharge and to direct Effluent to Water Reclamation Uses (as a first priority) and the Treatment Wetlands (as a second priority), which are to be implemented by the City in compliance with this TTFs Consent Decree.

/ / /
/ / /
/ / /

315753

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

26. **Notice of Event of Force Majeure, or Event of Implementation Constraint, Disagreement, or Breach; Period to Cure and Meet and Confer.**

a. **Notice of Event of Force Majeure or Event of Implementation Constraint, Disagreement or Breach.** The Parties agree that, despite the City's reasonable efforts to identify, select, plan, design, engineer, environmentally review, permit, construct, and implement Diversion Infrastructure Projects and Effluent diversions, the City may be prevented by an Event of Force Majeure, the Construction Implementation Constraints, or Operational Implementation Constraints from implementing Diversion Infrastructure Projects and/or Effluent diversions by the expiration of the Time Schedule. In addition, from time to time during the term of this TTFs Consent Decree, any Party may believe that another Party has breached this TTFs Consent Decree, or the Parties may disagree as to the appropriate interpretation or implementation of this TTFs Consent Decree, or the status or adequacy of any Party's performance of its obligations hereunder. In the event that any Party reasonably believes that an Event of Force Majeure or Event of Implementation Constraint, Disagreement, or Breach has occurred, then such Party shall provide the other Parties written notice of the occurrence of such event.

b. **Right to Cure; Meet and Confer.** Upon receipt of written notice from any Party of an Event of Force Majeure or an Event of Implementation Constraint, Disagreement or Breach, the affected Party or Parties shall have at least thirty (30) Days after receipt of the notice to cure any alleged breach of this TTFs Consent Decree, or to address the claims of the notice, and to provide a written response to such claims. If, after such thirty (30) Days (or such longer period as the Parties may mutually agree

to in writing) and provision of the written response to the notice, any Party reasonably believes that the Event of Force Majeure or Event of Implementation Constraint, Disagreement, or Breach has not been adequately addressed or cured, the Parties shall meet and confer to determine how best to respond to the Event of Force Majeure or Event of Implementation Constraint, Disagreement, or Breach, which response may involve, without limitation, the Parties' mutual agreement to: (a) modify, change, revise, or substitute different Diversion Infrastructure Projects, or Diversion Infrastructure Project components from those previously planned; (b) identify, select, and pursue implementation of different Effluent diversion flow alternatives and requirements than previously planned; (c) adjust capital investment, costs, expenses, and financing arrangements; (d) revise, modify, or prepare new applications for, or request amendments to, Required Agency Permits; (e) revise, modify, and extend the Time Schedule; and/or (f) delete, revise, change, modify, or develop new and additional TTFs Consent Decree terms and conditions.

c.  **Tolling**.  If any Party gives notice pursuant to Paragraph 26.a., all periods for performance and deadlines by which the City must perform any obligation set forth in this TTFs Consent Decree reasonably affected by the dispute (except the deadline for submission of the Annual Report set forth in Paragraph 28.a.), shall be tolled and extended by the number of Days it takes to resolve the noticed dispute(s).  Within fourteen (14) Days after resolution of such noticed dispute, the City shall send written notice to the other Parties of the obligations reasonably affected by the dispute, if any, and of the new deadlines for performance of those affected obligations, as extended to take into account the time period devoted to dispute resolution proceedings.  Upon receipt of such written notice,

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

Ventura Coastkeeper and Heal the Bay shall provide the City with written confirmation of receipt.

d. **Right to Seek Formal Dispute Resolution.**  If the Parties are unable to reach agreement with respect to addressing an Event of Force Majeure or Event of Implementation Constraint, Disagreement, or Breach pursuant to this "meet and confer" provision in Paragraph 26 within ninety (90) Days after the notice given under Paragraph 26.a. (or such longer period as may be mutually agreed to in writing by the Parties), then any Party may seek formal dispute resolution as provided in Paragraph 27.

27.     **Formal Dispute Resolution.** Upon completion of all meet and confer proceedings and time periods set forth in Paragraph 26, if the Parties cannot reach mutual agreement regarding any Event of Force Majeure or Event of Implementation Constraint, Disagreement, or Breach then each Party shall have the right, upon seven (7) business days written Notice, to initiate formal dispute resolution proceedings as follows:

a. **Dispute Regarding Maximum Ecologically Protective Diversion Volume.**  In the event that the informal dispute resolution process set forth in Paragraph 26 does not fully resolve within ninety (90) Days (or such longer period as may be mutually agreed to in writing by the Parties) any dispute regarding the appropriate Maximum Ecologically Protective Diversion Volume, then any Party may invoke formal dispute resolution by giving seven (7) business days written notice to all other Parties of such dispute, which dispute shall be resolved by a Scientific Review Panel in accordance with the following procedures.  Within thirty (30) Days of receipt of the written notice of scientific dispute, Ventura Coastkeeper and Heal the Bay shall mutually select one qualified scientific expert, and the City shall select one qualified scientific expert, to serve on a Scientific Review Panel, which shall review and resolve the scientific dispute.  Within thirty (30) Days (or such longer period as may

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

be agreed to in writing by the Parties) these two selected scientific experts shall select a third qualified scientific expert to serve on the Scientific Review Panel, at which point the Scientific Review Panel shall be deemed convened.  Within fifteen (15) Days after the Scientific Review Panel is convened (or such longer period as may be agreed to in writing by the Parties), each Party shall submit to the Scientific Review Panel, with a copy to each of the other Parties, a written statement of its position regarding the Maximum Ecologically Protective Diversion Volume, together with any appropriate data and information in support of the Party's position.  Within forty-five (45) Days after the Scientific Review Panel is convened (or such longer period as may be agreed to in writing by the Parties), each Party may submit to the Scientific Review Panel, with a copy to each of the other Parties, any written rebuttal statement and/or additional pertinent data or information for consideration by the Panel.  The Scientific Review Panel shall then review and objectively consider the material, and, within forty-five (45) Days after the due date for rebuttal statements and information (or such longer period as may be agreed to in writing by the Parties), the Scientific Review Panel shall decide and determine, by majority vote, the Maximum Ecologically Protective Diversion Volume based on the best available scientific information and data.  The Scientific Review Panel shall prepare and shall, concurrently with issuing its determination, submit to each of the Parties a written report explaining their determination concerning the Maximum Ecologically Protective Diversion Volume.  This report shall, at a minimum, include the Panel's evaluation of the environmental impacts of the alternative levels of Effluent discharge to the Estuary that they considered in making their determination of the Maximum Ecologically Protective Diversion

Volume, and the environmental impacts of the Effluent discharge regime that they determine constitutes the Maximum Ecologically Protective Diversion Volume.  This report shall also provide references to all the studies, reports, and data that the Panel relied upon in making its determination.  The City shall submit this report to the Resource Agencies concurrently with, or as a part of, its applications for any Required Agency Permits.  The Scientific Review Panel's determination of Maximum Ecologically Protective Diversion Volume shall be binding upon the Parties, and shall not be subject to further challenge or review.  The scientific experts selected and serving on the Scientific Review Panel shall keep reasonably detailed logs of hours expended in reviewing and resolving the scientific dispute, and shall be compensated by the City for the hours accounted for at prevailing commercial rates charged by other scientific professionals with substantially similar qualifications and expertise.

b.  **Other Disputes**.  All disputes arising under this TTFs Consent Decree that are not resolved under Paragraph 26 and/or Paragraph 27.a. shall be resolved as provided in this Paragraph 27.b.  In the event that the informal dispute resolution process discussed in Paragraph 26 does not reasonably resolve the Parties' disputes within ninety (90) Days (or such longer period as may be mutually agreed to in writing by the Parties), then, with respect to all disputes not subject to formal dispute resolution pursuant to Paragraph 27.a., any Party may invoke formal dispute resolution by filing a motion to show cause, or other appropriately named motion ("Motion"), in the District Court, before Judge George King, to whom the Case No. CV-10-02072-GHK (PJWx) is assigned, to resolve the dispute.  If Judge King refers the dispute to a court-appointed special master, or is not available to perform, or otherwise declines to perform,

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

the role identified herein, the Parties agree that the Motion shall be heard by the special master, or shall be re-assigned to another judge, court, magistrate, or arbitrator pursuant to applicable rules of the District Court, except that any Claim for attorneys' fees, expert fees, or costs incurred by any Party for the purposes of informal or formal dispute resolution shall be governed by Paragraph 35.c.iii and 38.c. of this TTFs Consent Decree. The decision or ruling by the District Court or the District Court's designee shall be fully binding upon the Parties, and shall not be subject to further challenge or review by any Party.

c. Notwithstanding anything in Paragraph 27.b. to the contrary, the Parties agree that Heal the Bay may elect either: to implement dispute resolution proceedings under Paragraph 27.b. on its own behalf; or to request that Ventura Coastkeeper institute dispute resolution proceedings pursuant to Paragraph 27.b. on behalf of ,or for the benefit of Heal the Bay and/or Ventura Coastkeeper.  The following terms and conditions shall apply to any formal dispute resolution proceeding instituted under Paragraph 27.b. by Ventura Coastkeeper on behalf of Heal the Bay:

 i. When reasonably requested by Heal the Bay to do so in writing, Ventura Coastkeeper may file and diligently prosecute to completion, a Motion for formal dispute resolution of any issues arising under this TTFs Consent Decree, so long as the Motion is authorized by, and is otherwise appropriate for Ventura Coastkeeper to file pursuant to Paragraphs 26 and 27.b., and the other applicable terms and conditions of this TTFs Consent Decree.

 ii. Ventura Coastkeeper shall provide Heal the Bay a written response within seven (7) business days to any request from Heal the Bay for Ventura Coastkeeper to initiate formal dispute resolution

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

proceedings on behalf of, and for the benefit of Heal the Bay.  If Ventura Coastkeeper's written response indicates that Ventura Coastkeeper is not ready, willing and able to represent Heal the Bay in the requested dispute resolution proceeding in a manner that is acceptable to Heal the Bay, then Heal the Bay reserves its rights to initiate and pursue formal dispute resolution proceedings as set forth in Paragraph 27.b. on its own behalf and for its own benefit.

iii.   Heal the Bay acknowledges that it has negotiated for the benefit conferred by Ventura Coastkeeper's agreement to prepare and submit all pleadings and filings with the District Court or its designee as may be necessary to implement formal dispute resolution proceedings on Heal the Bay's behalf.  Accordingly, Heal the Bay agrees that the judgment or ruling by the District Court or the District Court's designee on the Motion with respect to resolution of any dispute resolved by Ventura Coastkeeper on behalf of Heal the Bay pursuant to this TTFs Consent Decree shall be fully binding on Heal the Bay, Ventura Coastkeeper, and the City.  Further, by and upon its election to have Ventura Coastkeeper commence formal dispute resolution proceedings under Paragraphs 27 b. and c. on Heal the Bay's behalf, Heal the Bay expressly waives any right to initiate formal dispute resolution independently or without the assistance of Ventura Coastkeeper with respect to the subject matter of such proceedings, and/or to otherwise challenge or bring any Claim against the validity of such formal dispute resolution process, Ventura Coastkeeper's prosecution thereof, or the District Court's jurisdiction to rule on the Motion, and Heal the Bay shall not contest the validity of the Motion or any ruling on it in any proceeding of any type.

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

d. **Tolling**.  If any Party gives notice under Paragraph 27 commencing formal dispute resolution proceedings, then all periods for performance and deadlines by which the City must perform any obligation set forth in this TTFs Consent Decree reasonably affected by the dispute (except the deadlines for the Annual Report set forth in Paragraph 28.a.), shall be tolled and extended by the number of Days it takes to resolve the noticed dispute(s).  Within fourteen (14) Days after resolution of such noticed dispute, the City shall send written notice to the other Parties of the obligations reasonably affected by the dispute, if any, and of the new deadlines for performance of those affected obligations as extended to take into account the time period devoted to dispute resolution proceedings.  Upon receipt of such written notice, Ventura Coastkeeper and Heal the Bay shall provide the City with written confirmation of receipt.

28. **Annual Report and Deliverables.**

a. **City's Annual Report.**  Beginning on July 15 after the Effective Date of the TTFs Consent Decree and annually every July 15 thereafter until the Termination Date, the City shall provide to Ventura Coastkeeper and Heal the Bay for their review and comment the Annual Report regarding the status and progress of compliance with this TTFs Consent Decree, including copies of all available, final, non-confidential and unprivileged, pertinent supporting documents, information, and data not already delivered to Ventura Coastkeeper and Heal the Bay during the course of the year, such as, without limitation, documents and information regarding: phase 2 studies, phase 3 studies, or other related studies, study amendments or addenda, the planning, design, engineering, environmental review and impacts, permitting, construction, and operation of potential and preferred Diversion Infrastructure Project

alternatives; applications and supporting documentation for Required Agency Permits; and the potential for occurrence of Construction Implementation Constraints or Operational Implementation Constraints affecting any potential or preferred Diversion Infrastructure Project alternatives.  Nothing in this Paragraph shall limit or reduce the obligation of each Party under Paragraph 25 to use all reasonable efforts to cooperate with one another, and to actively and diligently participate in, advocate, and use reasonable efforts to support proceedings of the City and other agencies required for compliance with the TTFs Consent Decree.  Ventura Coastkeeper and Heal the Bay each agree that, notwithstanding the City's obligation to provide the Annual Report and to make available copies of available, pertinent supporting documents and information, Ventura Coastkeeper and Heal the Bay shall access any documents and information included or referenced in the Annual Report that have already been provided by the City to the public via the same means used by the City to provide those documents to the public (e.g., websites, stakeholder meetings, and other means of public communication used by the City from time to time).

b. **Ventura Coastkeeper and Heal the Bay Comments on Annual Report.**  Within thirty (30) Days after receipt of the Annual Report, Ventura Coastkeeper and Heal the Bay shall review the Annual Report and any supporting documentation, and those Parties shall provide any comments that either or both may have on the Annual Report in writing to the City.  Heal the Bay may elect either to submit written Annual Report comments on its own behalf to the City, or to have Ventura Coastkeeper submit written Annual Report comments on its behalf to the City as set forth in this Paragraph above.  If Heal the Bay elects to have Ventura Coastkeeper submit written Annual Report comments to the City

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

on its behalf, then Heal the Bay shall provide written notice of that election to Ventura Coastkeeper at least then (10) business days before such comments are due.  Within five (5) business days after receiving Heal the Bay's written notice of its election, Ventura Coastkeeper shall provide Heal the Bay with a written response indicating whether Ventura Coastkeeper will submit Annual Report comments on behalf of Heal the Bay to the City.  If Ventura Coastkeeper does not agree to submit Annual Report comments on behalf of Heal the Bay pursuant to its request, then Heal the Bay reserves its rights to submit written Annual Report comments to the City on its own behalf as set forth in this Paragraph above.  In the event that Ventura Coastkeeper and/or Heal the Bay request in those comments that the City provide additional, available, final, non-confidential and unprivileged, pertinent supporting documents, information or data, the City shall have at least fourteen (14) Days, or such longer time as the applicable Parties may mutually agree upon, to provide the requested information.  In the event that Ventura Coastkeeper and/or Heal the Bay reasonably request in those comments that the City provide additional, final, non-confidential and unprivileged, pertinent supporting documents, information, or data that is not readily available or accessible, the City shall have a reasonable time to access the requested information, or, if and only if the City agrees to do so, to prepare the requested information, and in any event shall have not less than thirty (30) Days to respond to such request.  Ventura Coastkeeper and Heal the Bay shall have thirty (30) Days after receipt of any supplemental information from the City referred to in this Paragraph to provide additional supplemental comments on the Annual Report to the City using the procedures set forth in this Paragraph above.  If Ventura Coastkeeper and/or Heal the Bay submit additional supplemental written

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

comments on the Annual Report, then the City shall have an additional thirty (30) Days after receipt of such supplemental comments to respond and/or provide an explanation of why it is addressing the comments in an alternative manner.

c. **Parties' Additional Responsibilities Regarding Annual Report.** Upon receipt of written comments on the Annual Report provided to the City pursuant to Paragraph 28.b., the City shall consider each of the comments and recommendations provided, and shall indicate to Ventura Coastkeeper and/or Heal the Bay (as applicable) in writing within thirty (30) Days after receipt of the comments (or such longer period as the applicable Parties may mutually agree upon) whether the City accepts such comments or recommendations, or, if the City rejects such comments or recommendations, the City shall provide a detailed explanation to the applicable Parties as to why the comments or recommendations are being rejected or responded to in an alternative manner. Taking into account the importance of using an adaptive management approach to, and preserving the City's policy role with respect to the objective identification, evaluation, and environmental review of potential Diversion Infrastructure Project alternatives, if the City in good faith does not accept the comments or recommendations provided under Paragraph 28.b., or responds to them in an alternative manner, and Ventura Coastkeeper and/or Heal the Bay, in good faith, reject the City's reasoning or alternative response, then the Parties shall meet and confer for purposes of resolving such dispute as set forth in Paragraphs 26 and/or 27, as applicable.

d. **Heal the Bay Waiver.** Heal the Bay acknowledges that it has negotiated for the benefit of having Ventura Coastkeeper prepare, submit, and coordinate with the City on Heal the Bay's behalf regarding preparation

of written comments on the Annual Report as set forth in Paragraph 28.b. Accordingly, in the event that Ventura Coastkeeper prepares and submits written Annual Report comments to the City on behalf of Heal the Bay, Heal the Bay expressly waives its rights to independently comment on the Annual Report and/or any supporting documentation provided or prepared by the City.  Further, from and after Ventura Coastkeeper's submission to the City of any written comments on the Annual Report pursuant to Paragraphs 28.b., Heal the Bay further expressly waives any rights Heal the Bay may have to challenge or bring any Claim against the City or Ventura Coastkeeper with respect to the adequacy of Ventura Coastkeeper's comments on the Annual Report, and/or any aspects of the Annual Report or supporting documentation, other than those addressed by Ventura Coastkeeper's comments.

e. **Other City Deliverables**.

    i. **Required Agency Permit Applications**.  The City shall provide Ventura Coastkeeper and Heal the Bay with copies of all applications for Required Agency Permits that must be submitted to Ventura Coastkeeper and/or the Resource Agencies as set forth in Paragraph 23 at the time such applications are due (subject to any delays to accommodate the exercise by any Party of its rights under Paragraphs 26 and/or 27, as applicable).

    ii. **Correspondence with Resources Agencies Regarding Required Agency Permits.**  In addition, the City shall provide Ventura Coastkeeper and Heal the Bay with copies of any substantive correspondence (including e-mail messages) between the City and the Resource Agencies concerning its applications for Required Agency Permits submitted by the City to the Resource Agencies under Paragraph 23.

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

## VIII.  DISMISSAL OF ADMINISTRATIVE PETITION; LODGING AND DISTRICT COURT ENTRY OF SETTLEMENT DOCUMENTS

29.     Within three (3) court days of the Parties' execution of the Stipulation for Limited Intervention and the TTFs Consent Decree, the City shall file with the District Court a Notice of Lodging, and shall lodge all Settlement Documents, which shall be fully executed by the Parties as appropriate.  Concurrently, the City shall file a notice with the District Court pursuant to the requirements of 40 C.F.R. § 135.5(b), notifying the District Court of the statutory requirement that the Settlement Documents shall not be entered by the District Court prior to forty-five (45) Days following receipt by both the EPA Administrator and the U.S. Attorney General of a fully executed copy of the TTFs Consent Decree.  The Notice of Lodging shall further request that:

a.     The District Court shall only consider and enter the Stipulation for Limited Intervention and [Proposed] Intervention Order in the event that the District Court has determined to approve and enter the TTFs Consent Decree and [Proposed] Dismissal Order, in which case the [Proposed] Intervention Order shall be entered immediately prior to entry of the [Proposed] Dismissal Order; and

b.     The District Court shall only consider and enter the Settlement Documents in the event that Heal the Bay has already filed with the District Court the Notice of Petition Dismissal.

30.     Also within three (3) court days of the Parties' execution of the Stipulation for Limited Intervention and this TTFs Consent Decree, and pursuant to 40 C.F.R. § 135.5(a), Ventura Coastkeeper shall serve a copy of the Settlement Documents, executed by all Parties as appropriate, upon the Administrator, Environmental Protection Agency, Washington, DC 20460, and the Attorney General, Department of Justice, Citizen Suit Coordinator, Room 2615, Washington, DC 20530.  Ventura Coastkeeper shall serve the Administrator and the Attorney General by certified mail (return receipt requested).  At the same time, Ventura Coastkeeper shall also mail a copy of the

Settlement Documents, fully executed by the Parties as appropriate, to the Regional Administrator, EPA Region 9.

31.    The agency review period for the Settlement Documents expires forty-five (45) Days after receipt of those documents by both the EPA Administrator and the Attorney General, as evidenced by the completed proofs of service or certified return receipts.  Pursuant to 40 C.F.R. § 135.5(b), as soon as Ventura Coastkeeper learns of the dates that the EPA Administrator and Attorney General received the Settlement Documents, it shall file a notice with the District Court, and provide a copy of such notice to each Party, setting forth the dates that the EPA Administrator and Attorney General received the Settlement Documents and the date that the agency review period is scheduled to expire.

32.    Upon execution of this TTFs Consent Decree by the Parties, Heal the Bay and the City shall take all reasonably required steps and actions, and shall file the documents appropriate, to assure full dismissal with prejudice of all pending Heal the Bay Claims alleged in, arising from, or related to the Administrative Petition or the facts alleged therein.  Prior to the expiration of the forty-five (45) Day agency review period for the Settlement Documents, Heal the Bay shall file with the District Court the Notice of Petition Dismissal, and shall provide copies of such notice to all Parties.

33.    In the event that neither the EPA Administrator nor the Attorney General comments negatively on the Settlement Documents during the forty-five (45) Day agency review period specified by 40 C.F.R. § 135.5, then, provided that Heal the Bay has properly and timely filed the Notice of Petition Dismissal pursuant to Paragraph 32, Ventura Coastkeeper shall, upon the expiration of such period, promptly request that the District Court first enter the [Proposed] Limited Intervention Order, granting limited intervention by Heal the Bay, then enter the[Proposed] Dismissal Order requiring the performance of the TTFs Consent Decree, and releasing and dismissing with prejudice the TTF Claims and the Complaint.  In the event that either the EPA Administrator or Attorney General comments negatively on any provisions of the Settlement Documents

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

during the 45-Day agency review period, Ventura Coastkeeper shall promptly coordinate and work with the applicable agency to address any negative comments, and the Parties agree to promptly meet and confer as necessary to attempt to resolve the issue(s) raised by the EPA Administrator or Attorney General.

34.　　If the Parties cannot resolve those issue(s) raised by the EPA Administrator or the Attorney General during the forty-five (45) Day agency review period, and/or Heal the Bay fails to file the Notice of Petition Dismissal with the District Court, and/or the District Court otherwise chooses not to enter the [Proposed] Limited Intervention Order or the [Proposed] Dismissal Order, then the Settlement Documents shall be null and void, unless:

　　　　a.　the Parties mutually agree in writing upon, and the District Court and/or State Board accept, different instruments or a different vehicle to settle, release, and dismiss with prejudice the TTFs Claims, the Complaint, and all Claims of the Administrative Petition, as well as those future certain other Claims of the Parties released by this TTFs Consent Decree, or

　　　　b.　the District Court chooses not to enter the [Proposed] Limited Intervention Order and the [Proposed] Dismissal Order solely because it does not grant intervention to Heal the Bay – in which case Ventura Coastkeeper and the City shall enter into a proposed consent decree between them with the same terms expressed in their Memorandum of Settlement and Heal the Bay and Ventura shall execute a final settlement agreement with the same terms expressed in the Memorandum of Settlement.

/ / /

/ / /

/ / /

## IX. COVENANT NOT TO ADMINISTRATIVELY OR JUDICIALLY CHALLENGE OR SUE, MUTUAL RELEASES, AND WAIVERS

35. **Covenant Not to Administratively or Judicially Challenge or Sue.**

a. Except as permitted by this TTFs Consent Decree in Paragraph 35.b., the Parties shall not advocate, pursue, or request a determination, permit, certification, approval, or other Legal or Regulatory Action from, or petition, appeal, administratively, legally, or judicially challenge or sue, or otherwise support, encourage, or initiate any Claim before any one of the Agencies with Jurisdiction or any court with jurisdiction, to obtain any Legal or Regulatory Action that is contrary to the TTFs Consent Decree and that would be specific to, and binding upon, any Party.

b. **Exceptions to Covenant Not to Sue or Challenge.** Notwithstanding anything to the contrary in Paragraph 35.a. or the releases set forth in Paragraph 35.c. below, each Party reserves and shall have the following rights to pursue Claims:

  i. So long as such Party has not otherwise violated the terms and conditions of Paragraphs 23c., 23.d., 23.e, or 35.a., that Party may challenge, administratively appeal or seek judicial review of the terms and conditions of any Required Agency Permits or other Legal or Regulatory Actions that are contrary to, or inconsistent with the TTFs Consent Decree.

  ii. During the term of the TTFs Consent Decree, any Party may institute Claims to enforce the terms and conditions of, and remedy any breach of the TTFs Consent Decree, subject to and in strict accordance with Paragraphs 26 and/or 27, as applicable, above.

  iii. No Party shall be deemed to be precluded from bringing Claims or asserting arguments otherwise available to them in the absence of this TTFs Consent Decree in any administrative or judicial

proceeding concerning general policy positions, the general validity of statutes, administrative rules, regulations, or general permits, or the general applicability and operation thereof, even if such statutes, administrative rules, regulations, general permits, or regulatory policies could be deemed to apply to the City, Ventura Coastkeeper, or Heal the Bay as part of a class of regulated entities, so long as no Party is individually named as a defendant or opponent in such Claim, and no Party contends that any other Party's actions or operations (including without limitation the Effluent discharges) are a reason for, or a case study for, supporting the general validity or invalidity of such statutes, administrative rules, regulations, general permits, or regulatory policies.

iv.   In the event that the City fails to implement the Approved Effluent Diversions on the Time Schedule because to do so would require construction and operation of Diversion Infrastructure Projects that are Financially Infeasible because, although the City will not need to raise its sewer rate to levels that would cause the Median Income Cap and the Annual Rate Cap components of Financial Infeasibility to be exceeded, the Total Net Investment for the Diversion Infrastructure Projects exceeds the Net Investment Cap, then the City shall not be in breach of this TTFs Consent Decree, and the Parties shall meet and confer as set forth in Paragraphs 26 and/or 27, as applicable.  Further, in addition to those remedies provided by this TTFs Consent Decree, the Parties agree that in such case, and solely in such case, Ventura Coastkeeper and Heal the Bay each reserves and retains any legal rights otherwise available to it in the absence of this TTFs Consent Decree to assert

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

a Claim challenging the City's failure to implement Diversion Infrastructure Projects as necessary to make the Approved Effluent Diversions on the Time Schedule.

v. In the event that the City causes or materially contributes to a significant and unlawful discharge of pollutants or waste to the Estuary that results in death of wildlife occupying the Estuary, or destruction and substantial, long-term degradation of habitat provided by the Estuary, then Ventura Coastkeeper and Heal the Bay each reserves any legal rights otherwise available to it in the absence of this TTFs Consent Decree to administratively challenge such a discharge of pollutants or waste.

vi. The reservations of rights set forth in Paragraph 35.b.iii, 35.b.iv and 35.b.v. operate only to reserve and retain the rights of Parties to assert Claims that the Parties would otherwise be legally entitled to assert in the absence of this TTFs Consent Decree, but nothing in those provisions shall be interpreted to create any new rights or Claims, or any basis for a new Claim.

c. **Mutual Releases of Liability.**

i. **Mutual Release of All Pending Claims and Liability Related to the Administrative Petition.** In consideration of the mutual obligations of this TTFs Consent Decree, Heal the Bay and the City agree that, from and after the Effective Date of this TTFs Consent Decree, each Party , for itself and for its owners, shareholders, members, directors, employees, agents, representatives, attorneys, affiliates, consultants, successors and assigns, shall fully release the other Parties, and its respective owners, shareholders, members, directors, employees, agents, representatives, attorneys, affiliates, consultants, successors and assigns, and all persons, firms, and corporations having an interest

in it, from any and all pending Claims asserted in, arising from, or related to the Claims in the Administrative Petition, including but not limited to Claims regarding the alleged violation, continuing violation, or failure of the City to comply with the CWA, Porter-Cologne, ESA, CESA, the NPDES Permit, the City's municipal ordinances, or any other general or individual discharge permits, as set forth in or arising from the facts, circumstances, legal authorities or claims in the Administrative Petition.  This release includes a waiver, general release and covenant not to sue or file any such pending Claim, whether or not already asserted, including Claims for fees of attorneys, experts, or consultants, and others, any costs or expenses, or any other sum incurred by any Party in connection with any Claim arising prior to and through the Effective Date of this TTFs Consent Decree.

ii. **Mutual Release of All Pending Claims and Liability Related to the TTFs Claims and the Complaint.**  In consideration of the mutual obligations of this TTFs Consent Decree, the Parties agree, from and after the Effective Date of the TTFs Consent Decree, each Party, for itself and for its owners, shareholders, members, directors, employees, agents, representatives, attorneys, affiliates, consultants, successors, and assigns, shall fully release the other Parties to the TTFs Consent Decree, and its respective owners, shareholders, members, directors, employees, agents, representatives, attorneys, affiliates, consultants, successors, and assigns, and all persons, firms, and corporations having an interest in it, from any and all pending Claims, asserted in, arising from, or related to the TTFs Claims and/or the Complaint, including but not limited to the alleged violation, continuing violation, or failure of the City to comply with the CWA, Porter-Cologne, ESA,

CESA, the NPDES Permit, the City's municipal ordinances, or any other general or individual discharge permits, as set forth in or arising from the facts, circumstances, legal authorities or Claims in the Notice Letter, the Complaint and/or Case No. CV-10-02072-GHK (PJWx), or documents referenced therein.  This release includes a waiver, general release and covenant not to sue or file any such pending Claims, whether or not already asserted, including Claims for fees of attorneys, experts, consultants, and others, costs or expenses, or any other sum incurred by any Party in connection with any Claim arising prior to and through the Effective Date of this TTFs Consent Decree.

iii. **Mutual Release of Future Claims**:  In consideration of the mutual obligations of this TTFs Consent Decree and in furtherance of Paragraph 35.a., the Parties agree that, from and after the Effective Date of this TTFs Consent Decree, each Party, for itself and for its owners, shareholders, members, directors, employees, agents, representatives, attorneys, affiliates, consultants, successors, and assigns, fully releases and covenants not to sue or assert any future Claims of any kind or nature, whether known or unknown, against the other Parties, or such Parties' respective owners, shareholders, members, directors, employees, agents, representatives, attorneys, affiliates, consultants, successors, and assigns, or persons, firms, and corporations having an interest in the Party, except as specifically and expressly permitted by the reservations of rights set forth in Paragraphs 35.b, 38.c, and 39. This release includes a waiver, general release, and covenant not to sue or file any Claim for future fees of staff, attorneys, experts, consultants, and others, or costs or expenses, or any other sum incurred in connection with this TTFs Consent Decree, except as expressly permitted by Paragraphs 38.c. and 39.

56

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

**d. General Provisions Regarding Waivers and Releases**

    i. **Waiver of California Civil Code Section 1542.** In connection with the waivers and general releases of existing, future, known, and unknown Claims provided and/or executed pursuant to Paragraphs 27.c.iii., 28.d., 35.a., 35.c., 37, 38.a., and 38.b, and subject only to the exceptions set forth in Paragraphs 35.b., 38.c.i. through 38.c.iv., and 39, each of the City, Ventura Coastkeeper, and Heal the Bay on behalf of itself, and its owners, shareholders, members, directors, employees, agents, representatives, attorneys, affiliates, consultants, successors, and assigns, expressly waives, for the benefit of each other Party and all related persons and entities with respect to all waivers and releases set forth in this TTFs Consent Decree, the benefit of California Civil Code § 1542, which provides as follows:

    **A GENERAL RELEASE DOES NOT EXTEND TO ALL CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Initials:    **City**    **Ventura Coastkeeper**    **Heal the Bay**

    ii. **Heal the Bay Representations and Warranties.** Dr. Mark Gold, represents and warrants that he is authorized to execute this TTFs Consent Decree, and to otherwise act on legal matters on behalf of Heal the Bay without seeking advice or counsel of an attorney licensed to practice law in California. Dr. Gold further represents and

315753

57

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

**d. General Provisions Regarding Waivers and Releases**

    i. **Waiver of California Civil Code Section 1542.** In connection with the waivers and general releases of existing, future, known, and unknown Claims provided and/or executed pursuant to Paragraphs 27.c.iii., 28.d., 35.a., 35.c., 37, 38.a., and 38.b, and subject only to the exceptions set forth in Paragraphs 35.b., 38.c.i. through 38.c.iv., and 39, each of the City, Ventura Coastkeeper, and Heal the Bay on behalf of itself, and its owners, shareholders, members, directors, employees, agents, representatives, attorneys, affiliates, consultants, successors, and assigns, expressly waives, for the benefit of each other Party and all related persons and entities with respect to all waivers and releases set forth in this TTFs Consent Decree, the benefit of California Civil Code § 1542, which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO ALL CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

**Initials:**    **City**      **Ventura Coastkeeper**    **Heal the Bay**

    ii. **Heal the Bay Representations and Warranties.** Dr. Mark Gold, represents and warrants that he is authorized to execute this TTFs Consent Decree, and to otherwise act on legal matters on behalf of Heal the Bay without seeking advice or counsel of an attorney licensed to practice law in California. Dr. Gold further represents and

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

warrants that he is a person experienced in these types of legal agreements and transactions, and has substantial experience in reviewing, implementing, and enforcing agreements like this TTFs Consent Decree, as well as the legal and regulatory matters addressed herein. Dr. Gold acknowledges that the City has recommended that Heal the Bay have this TTFs Consent Decree reviewed by legal counsel, but, in the exercise of Dr. Gold's sole discretion acting as President of Heal the Bay, he has declined to have legal counsel review the terms of this TTFs Consent Decree based on his expertise and experience in legal matters like this one, and with respect to the CWA, the Porter-Cologne, CESA and ESA.

*MG*

**Heal the Bay's Initials**

36. **Compliance Monitoring Payments for Ventura Coastkeeper.** In full and final satisfaction of all of Ventura Coastkeeper's collective accrued and future attorneys' fees, legal and technical consultants' fees, staff fees and costs, experts' fees, expenses, and costs, and any other costs and expenses incurred by Ventura Coastkeeper in connection with implementing its obligations under this TTFs Consent Decree, including, without limitation, Ventura Coastkeeper's: participation and cooperation under Paragraphs 23 and 25; its review and comment on the Annual Report and any other data, reports, studies, information, or documents prepared and provided to Ventura Coastkeeper pursuant to Paragraphs 23, 25 and 28; its challenge to any Rate Rejection under Paragraph 24; its participation in any informal dispute resolution process under Paragraph 26; and/or its participation in any formal dispute resolution process under Paragraph 27.b. to address an Event of Implementation Constraint or Disagreement, the City shall pay Ventura Coastkeeper a total sum of $120,000 in six equal annual payments of $20,000 each, without interest or service charges of any kind. The first annual payment shall be due from the City to Ventura Coastkeeper on the date that is thirty (30)

Days after the Effective Date of this TTFs Consent Decree, without further invoice or notice being required from Ventura Coastkeeper.  The remaining five annual payments shall be made to Ventura Coastkeeper on the date that is the later of: (a) thirty (30) Days after the City receives a written invoice from Ventura Coastkeeper requesting payment of the annual $20,000 installment, or (b) the date that constitutes the first, second, third, fourth, and fifth year anniversaries (respectively) of the first annual payment.  All payments shall be made payable to "Ventura Coastkeeper," addressed to those persons and at the address specified for notices by Ventura Coastkeeper in this TTFs Consent Decree, and shall made available for Ventura Coastkeeper to collect when due at the City Clerk's office.  The funds provided by the City to Ventura Coastkeeper under this Paragraph 36 shall only be used by Ventura Coastkeeper for purposes of implementing the provisions of this TTFs Consent Decree applicable to Ventura Coastkeeper, and for monitoring the status and progress of the City's compliance with this TTFs Consent Decree, and under no circumstances shall the funds be used for any lobbying activities, or to institute any Claim against the City, except a Claim for enforcement of the TTFs Consent Decree as permitted by, and pursuant to, Paragraphs 26, 27, 35.b.i. and 35.b.ii. Ventura Coastkeeper shall keep an accounting of all expenditures charged against this $120,000 monitoring fund.  Ventura Coastkeeper shall provide a copy of this accounting to the City on the earlier date of (a) exhaustion of the $120,000 fund, or (b) the Termination Date.

37.   **Waiver of Compliance and Monitoring Payments for Heal the Bay.** Heal the Bay hereby expressly waives its rights to, and agrees not to seek, demand, recover or make a Claim against the City for any accrued or future attorneys' fees, legal and technical consultants' fees, staff fees and costs, experts' fees, expenses, or costs or any other fees, costs and expenses incurred in connection with implementing, or causing Ventura Coastkeeper to implement, Heal the Bay's obligations under this TTFs Consent Decree , including, without limitation, fees, costs or expenses associated with Heal the Bay's and/or Ventura Coastkeeper's: participation and cooperation under Paragraphs 23

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

and 25, their review and comment on the Annual Report and any other data, reports, studies, information or documents prepared and provided to Ventura Coastkeeper and/or Heal the Bay pursuant to Paragraphs 23, 25 and 28, their challenge to any Rate Rejection under Paragraph 24, their participation in any informal dispute resolution process under Paragraph 26, and/or their participation in any formal dispute resolution process under Paragraph 27.b to address and Event of Implementation Constraint or Disagreement.

38.     **Attorneys' and Consulting Fees.**

a.     **Settlement of Ventura Coastkeeper's Staff, Attorneys' and Consultants' Fees through the Effective Date of the TTFs Consent Decree.**  In full and final settlement of any and all of Ventura Coastkeeper's Claims for staff, attorneys', consultants', and experts' fees, expenses, and costs that Ventura Coastkeeper may be entitled to claim or collect in connection with the Notice Letter, the Complaint, the TTFs Claims, the Administrative Petition, the Notice of Petition Dismissal, the Settlement Documents, and any and all Claims dismissed and released under Part VIII, and Paragraphs 35.c.i. and 35.c.ii. of this TTFs Consent Decree, the City shall pay Ventura Coastkeeper the sum of Fifty Nine Thousand dollars ($59,000) within thirty (30) Days after the Effective Date of the TTFs Consent Decree.  All payments shall be made payable to "Ventura Coastkeeper," addressed to those persons specified for notices by Ventura Coastkeeper in the TTFs Consent Decree, and shall made available for Ventura Coastkeeper to collect when due at the City Clerk's office.  Upon payment of such sum, Ventura Coastkeeper shall be deemed to have waived any further Claim for attorneys', consultants', and experts' fees, expenses, and costs accruing and/or incurred up to and including the Effective Date of this TTFs Consent Decree.

/ / /

/ / /

b. **Waiver of Heal the Bay's Staff, Attorneys' and Consultants' Fees Incurred through the Effective Date of the TTFs Consent Decree.** Heal the Bay hereby expressly waives its rights to, and agrees not to seek, demand, recover or make a Claim against the City for any staff, attorneys', consultants', and experts' fees, expenses, and costs accrued and/or incurred up to and including the Effective Date of this Consent Decree, including fees, expenses and costs in connection with the Notice Letter, the Complaint, the TTFs Claims, the Administrative Petition, the Notice of Petition Dismissal, the Settlement Documents, and/or Claims dismissed and released under Part VIII and Paragraphs 35.c.i and 35.c.ii of this TTFs Consent Decree.

c. **Future Attorneys' and Consulting Fees After the Effective Date.** As set forth in Paragraphs 35.a., 35.c.iii, 36, and 37 above, each Party releases any Claim for, and shall be responsible for all of its own future staff, attorneys', consultants', staff, and scientific, technical, or other experts' and consultants' fees, expenses, and costs incurred and/or accruing after the Effective Date of this TTFs Consent Decree, including fees, costs and expenses in connection with any Claim of whatever kind and nature, related to each Party's performance pursuant to, implementation of, or in any other way arising under or in connection with, this TTFs Consent Decree and its implementation, including formal and informal dispute resolution under this TTFs Consent Decree, except that each of the Parties retains and reserves its rights to make an appropriate Claim for an award of future staff, attorneys', consultants', and/or experts fees, expenses, and costs pursuant to the following exceptions:

   i. as otherwise set forth in Paragraph 27.a. with respect to compensation by the City of a Scientific Review Panel; provided,

315753

61

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

however, that in the event that any Party refers an issue to the Scientific Review Panel that is determined by dispute resolution under Paragraphs 26 and/or 27.b. to be frivolous or primarily for purposes of harassment or delay, then the dispute resolver under Paragraph 27.b. shall have the authority to award costs of such dispute resolution proceeding as well as reasonable attorneys', consultants, and experts' fees to the prevailing Party in the scientific dispute resolution proceeding;

    ii.    as otherwise set forth in Paragraph 36 regarding compliance monitoring fees that the City has agreed to pay;

    iii.    as otherwise set forth in Paragraph 39 regarding monetary penalties the City has agreed to pay in the event that it fails to timely deliver the Annual Report; and

    iv.    the prevailing or substantially prevailing party in any formal dispute resolution proceeding brought pursuant Paragraphs 27.b. and 35.b.ii. for a breach of the TTFs Consent Decree shall receive its reasonable costs and attorney's fees incurred in accord with the standard established by § 505 of the Clean Water Act, 33 U.S.C. §1365. Such fees and costs shall be paid to the prevailing or substantially prevailing party in the formal dispute resolution proceeding under Paragraph 27.b. for a breach of the TTFs Consent Decree, provided, however, that:

- no Party shall be permitted to demand or make a Claim for any fees, costs, or expenses incurred in pursuing informal dispute resolution under Paragraph 26, which is necessary as a prerequisite to invoking formal dispute resolution under Paragraph 27.b.;

- as set forth in Paragraphs 36 and 37, no Party shall be permitted

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

to demand or make a Claim for any fees, costs, or expenses incurred in pursuing formal dispute resolution for an Event of Implementation Constraint or Disagreement under Paragraph 27.b.;

- no Party shall make any demand for attorneys' fees during any informal dispute resolution proceeding under Paragraph 26; and

- no Party shall attempt to condition, or demand that any informal dispute resolution proceeding under Paragraph 26, or any formal dispute resolution proceeding under Paragraph 27.b. be conditioned upon, the payment of such Party's attorneys', experts', staff's, or consultants' fees, costs, or expenses incurred in pursuing informal dispute resolution.

Accordingly, except as expressly set forth in this Paragraph 38.c., no Party shall make any demand or Claim for attorneys', consultants', staff, and scientific, technical, or other experts' and consultants' fees, sums, expenses, and costs in connection with contesting a Rate Rejection, or otherwise implementing this TTFs Consent Decree and fulfilling participation and cooperation obligations, reviewing or commenting on the Annual Report, conducting compliance monitoring, or participating in informal or formal dispute resolution proceeding.

## X.   STIPULATED MONETARY PENALTIES FOR CERTAIN VIOLATIONS OF THIS TTFs CONSENT DECREE

39.     **Monetary Penalties.**  Unless the City obtains an extension of an applicable due date for good cause, which extension shall not be unreasonably withheld by Ventura Coastkeeper, if the City fails to submit the Annual Report to Ventura Coastkeeper at the time due under Paragraph 28.a., then Ventura Coastkeeper shall provide written notice to the City of such failure, and the City shall have fifteen (15) Days as a grace period to cure its failure to provide the report to Ventura Coastkeeper.  If the City fails within fifteen

(15) Days after receipt of Ventura Coastkeeper's written notice to provide the Annual Report to Ventura Coastkeeper, then the City shall pay stipulated payments accruing from the sixteenth Day following the Ventura Coastkeeper notice until the date that the City provides the Annual Report as follows:

| Period of Noncompliance | Payment Per Violation |
| --- | --- |
| Days 1-30 | $100 per Day |
| Days 31-60 | $200 per Day |
| Days over 60 | $500 per Day |

Ventura Coastkeeper shall use its best efforts to obtain before the expiration of the 45-Day agency review period for the Settlement Documents a written letter agreement executed by and among the City, Ventura Coastkeeper and Santa Clara River Watershed Conservancy, or any other written document that is acceptable to the Department of Justice and binding upon Santa Clara River Watershed Conservancy, providing that the Santa Clara River Watershed Conservancy shall accept and use any stipulated payments that become due and payable by the City under this Paragraph to fund activities which benefit the watershed and ocean environments in and surrounding the watersheds in the area affected by City discharges of Effluent, and shall not use stipulated payments, if any, for lobbying activities or purposes of asserting any Claims against the City.  Provided that such written letter agreement or document is obtained from the Santa Clara River Watershed Conservancy, the City shall tender any stipulated payments that become due and payable hereunder to Santa Clara River Watershed Conservancy, to be used solely to fund activities other than lobbying and litigation activities that benefit the watershed and ocean environments in and surrounding the watersheds in the area affected by the Effluent, and the City shall send such payments via overnight mail to: the Santa Clara River Watershed Conservancy, Attn: Elise Kelley, Executive Director, Santa Clara River Watershed Conservancy, 23642 Lyons Ave., #221143, Newhall, CA 91322.  The City shall send written notice to Ventura Coastkeeper once it has sent any such payments.  If the Santa Clara River Watershed Conservancy has not provided the written letter

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

agreement, but has provided another document acceptable to the Department of Justice as referenced in this Paragraph by the time that the District Court is prepared to enter the Settlement Documents, then the Parties shall rely on such other written document, and Ventura Coastkeeper shall thereafter use its best efforts to obtain a written letter agreement from the Santa Clara River Watershed Conservancy regarding use of any stipulated payments that is mutually acceptable to, and agreed upon Ventura Coastkeeper and the City.  If the Santa Clara River Watershed Conservancy has not provided the written letter agreement or any other document acceptable to the Department of Justice as referenced in this Paragraph by the time that the District Court is prepared to enter the Settlement Documents, then such written letter agreement or document shall be entered into with another environmental organization that is mutually acceptable to, and agreed upon by Ventura Coastkeeper and the City.

## XI.   NOTICES AND SUBMISSIONS

40.    Any notifications, submissions, or communications to Ventura Coastkeeper, Heal the Bay, or  the City pursuant to this TTFs Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below (electronic return receipt requested) or, if electronic transmission is not feasible, via U.S. Mail or hand delivery to the addresses below.  Any change in the individuals or addresses designated by any Party must be made in writing to all Parties.

If to Ventura Coastkeeper:

Christopher Sproul
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, CA 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com

Law Office of Patricia Weisselberg
115 Oakdale Avenue
Mill Valley, CA 94941
Telephone: (415) 388-2303
Email: pweisselberg@wans.net

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

Jason Weiner, Staff Attorney
Wishtoyo Foundation's Ventura Coastkeeper Program
3875-A Telegraph Rd., #423
Ventura, CA 93003
Telephone: (805) 823-3301
Email: jweiner.venturacoastkeeper@wishtoyo.org

If to the CITY:

Rick Cole
City Manager, City of San Buenaventura
501 Poli Street, Room 205
Ventura, CA  93002-0099
Telephone:  (805) 654-7740
Email: citymanager@ci.ventura.ca.us

Shana Epstein
Chief Executive Officer, Ventura Water
335 San Jon Road
Ventura, CA  93001
Telephone:  (805) 652-4518
Email: sepstein@ci.ventura.ca.us

Ariel Pierre Calonne
City Attorney, City of San Beunaventura
501 Poli Street, Suite 26
Ventura, CA  93002-0099
Telephone:  (805) 654-7818
Email:  acalonne@ci.ventura.ca.us

If to the Heal the Bay:

Christopher Sproul
ENVIRONMENTAL ADVOCATES
5135 Anza Street
San Francisco, CA 94121
Telephone: (415) 533-3376
Facsimile: (415) 358-5695
Email: csproul@enviroadvocates.com

Kirsten James
Director Water Quality
Heal the Bay
1444 9th Street
Santa Monica, CA  90401
Telephone: (310) 451-1500
Email: kjames@healthebay.com

/ / /

315753

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

41.     Written notices submitted in accordance with this TTFs Consent Decree shall be deemed submitted on the date they are postmarked or, if sent electronically, they shall be deemed submitted upon transmission, but a notice is not effective if the sending Party learns that it did not reach the Party to be notified.  Notwithstanding the sender's receipt of a successful delivery notification, a recipient that fails to receive the submission may request delivery by other means.  Such a request does not affect the timeliness of the original submission.

42.     Any notice, report, certification, data presentation or other document submitted by the City to Ventura Coastkeeper pursuant to this TTFs Consent Decree, which discusses, describes, demonstrates, or supports any finding or makes any representation concerning compliance or non-compliance with any requirement(s) of this TTFs Consent Decree, shall contain the following certification, signed and dated by a responsible official:

> I certify, under penalty of perjury, that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted and is, to the best of my knowledge and belief, true, accurate and complete.

## XII.   GENERAL PROVISIONS

43.     **Successors and Assigns**.  The provisions of this TTFs Consent Decree apply to and bind each of Ventura Coastkeeper, Heal the Bay, and the City, including each Party's directors, employees, owners, members, agents, representatives, shareholders, servants, contractors, consultants, successors, assigns, and legal affiliates. No change in structure, ownership, corporate, or other legal status of any Party, nor any transfer of the assets or liabilities of any Party, shall in any way alter the responsibilities of such Party under this Settlement Agreement, including its directors, employees, owners, members, agents, representatives, shareholders, servants, contractors, consultants, successors, assigns, and legal affiliates.

315753

67

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

44. **No Effect on the SSO Consent Decree**.  The terms and conditions of this TTFs Consent Decree shall not be interpreted, applied or implemented that would, in any way, alter, modify, revise, terminate, or supersede the provisions of that certain SSOs Consent Decree and Stipulated Order to Dismiss entered into by and among Ventura Coastkeeper and the City, and entered by the District Court for the Central District of California on November 23, 2010, releasing and dismissing with prejudice those single and/or continuing SSO-related violations alleged by Ventura Coastkeeper in connection with Claims III through V of the Complaint filed in Civil Case No. CV-10-02072-GHK(PJWx), and certain future Claims as set forth therein.

45. **Continuing Jurisdiction**.  The Parties stipulate that the District Court for the Central District of California shall have jurisdiction over the Parties, and shall retain jurisdiction to enforce the terms and conditions of this TTFs Consent Decree, and to resolve disputes pursuant to Paragraph 27.b., and otherwise as may be necessary or appropriate for the interpretation, implementation, construction, or execution of, and dispute resolution pursuant to this TTFs Consent Decree during its term, up to and including the Termination Date..  Each Party hereby waives all current and future objections it may have to the District Court's establishment or retention of jurisdiction over this TTFs Consent Decree, and each Party agrees to take such further actions, including preparing and filing such documents with the District Court as may be necessary to enable the District Court to establish or retain jurisdiction for the purposes set forth in this Paragraph.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994).

46. **Construction**.  The language in all parts of this TTFs Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms specifically defined in the CWA or in this TTFs Consent Decree, including, but not limited to, those terms specifically defined in Part II above.

47. **Choice of Law**.  The laws of the United States shall govern this TTFs Consent Decree.

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

48. **Severability**.  In the event that any provision, subparagraph, paragraph, or sentence of this TTFs Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

49. **Counterparts**.  This TTFs Consent Decree, and all other Settlement Documents and other documents to be executed hereunder and/or in connection herewith, and any amendments, modifications, revisions or notices to such documents, may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy, electronically scanned copies (e,g., a pdf), and/or facsimile copies of original signatures shall be deemed to be originally executed counterparts of this TTFs Consent Decree.

50. **Modification of the TTFs Consent Decree**.  This TTFs Consent Decree, and any provisions herein, may not be changed, discharged, or terminated unless by a written instrument, signed by all of the Parties.

51. **Written Waiver of Conditions**.  The Parties agree that a Party may waive in writing any one or more of the provisions herein; provided, however, that no Party shall waive compliance with the CWA, Porter-Cologne, or other requirements under applicable laws.  A written waiver of a provision must be delivered in accordance with the notice provisions of Part XI hereof.  No waiver of a breach, failure of condition, or any right or remedy contained in or granted by the provisions of this TTFs Consent Decree is effective unless it is in writing and signed by the Party waiving the breach, failure, right or remedy.  No waiver of a breach, failure of condition or right or remedy is or may be deemed a waiver of any other breach, failure, right or remedy, whether similar or not.  In addition, no waiver will constitute a continuing waiver unless the writing so specifies.  As to any condition to the obligations of all Parties, a waiver of that condition will be effective only if made by all Parties.

52. **Full Settlement**.  This TTFs Consent Decree constitutes a full and final settlement of the TTF Claims, the Complaint, and all Claims asserted in, arising from or related to that Administrative Petition.

53. **Integration Clause**. This is an integrated TTFs Consent Decree. This TTFs Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties related to settlement of the TTF Claims, the Complaint, and Claims of the Administrative Petition, and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this TTFs Consent Decree, including that certain Memorandum of Agreement Regarding Settlement Terms.

54. **Authority**. The undersigned representatives for Ventura Coastkeeper and the City each certify that he/she is fully and legally authorized by the Party whom he/she represents to enter into the terms and conditions of this TTFs Consent Decree, execute it on behalf of the indicated Party, and to legally bind the represented Party to its terms. In any action to enforce this TTFs Consent Decree, no Party shall raise as defense the lack of authority of the undersigned representatives.

**In Witness Whereof, the Parties hereto hereby enter into this TTFs Consent Decree.**

**CITY OF SAN BUENAVENTURA**

Date: __1/30/12__      By _____
                          Rick Cole, City Manager

**WISHTOYO FOUNDATION/VENTURA COASTKEEPER**

Date: __1-30-2012__     By _____
                          Mati Waiya, Executive Director

315753                     70
PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

**HEAL THE BAY**

Date: _1'-2 7-12_                       By _[signature]_
                                        Dr. Mark Gold, President

**APPROVED AS TO FORM:**                 **For DEFENDANT CITY OF SAN BUENAVENTURA**

Date: _____                   By _____
                                        Ariel Pierre Calonne

**APPROVED AS TO FORM:**                 **For WISHTOYO FOUNDATION/ VENTURA COASTKEEPER:**

Date: _____                   By _____
                                        Christopher Sproul
                                        Environmental Advocates

**APPROVED AS TO FORM:**                 **For WISHTOYO FOUNDATION/ VENTURA COASTKEEPER:**

Date: _____                   By _____
                                        Jason A.Weiner
                                        Staff Attorney for Plaintiffs

/ / /
/ / /
/ / /

315753                          71

**HEAL THE BAY**

Date: _____

By _____
       Dr. Mark Gold, President

**APPROVED AS TO FORM:**

**For DEFENDANT CITY OF SAN BUENAVENTURA:**

Date: _1-30-2012_

By _____
       Ariel Pierre Calonne

**APPROVED AS TO FORM:**

**For WISHTOYO FOUNDATION/ VENTURA COASTKEEPER:**

Date: _____

By _____
       Christopher Sproul
       Environmental Advocates

**APPROVED AS TO FORM:**

**For WISHTOYO FOUNDATION/ VENTURA COASTKEEPER:**

Date: _____

By _____
       Jason A. Weiner
       Staff Attorney for Plaintiffs

/ / /
/ / /
/ / /

315753

71

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL

1

2          **HEAL THE BAY**

3

4    Date: _____          By _____
                                            Dr. Mark Gold, President
5

6

7    **APPROVED AS TO FORM:**        **For DEFENDANT CITY OF SAN
                                       BUENAVENTURA**
8

9    Date: _____          By _____
                                            Ariel Pierre Calonne
10

11   **APPROVED AS TO FORM:**        **For WISHTOYO FOUNDATION/
                                       VENTURA COASTKEEPER:**
12

13

14   Date: Jun. 27, 2012             By *Christopher Sproul*
15                                        Christopher Sproul
                                          Environmental Advocates
16

17

18   **APPROVED AS TO FORM:**        **For WISHTOYO FOUNDATION/
                                       VENTURA COASTKEEPER:**
19

20

21   Date: _____          By _____
                                            Jason A. Weiner
22                                        Staff Attorney for Plaintiffs

23   / / /

24   / / /

25   / / /

26

27

28

315753                                    71
            PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
                   AND STIPULATED DISMISSAL

1

2

3                                                **HEAL THE BAY**

4    Date: _____        By _____
                                          Dr. Mark Gold, President
5

6
                                         **For DEFENDANT CITY OF SAN**
7    **APPROVED AS TO FORM:**            **BUENAVENTURA**

8

9    Date: _____        By _____
                                          Ariel Pierre Calonne
10

11
                                         **For WISHTOYO FOUNDATION/**
     **APPROVED AS TO FORM:**            **VENTURA COASTKEEPER:**
12

13

14

15   Date: _____        By _____
                                          Christopher Sproul
16                                        Environmental Advocates

17

18   **APPROVED AS TO FORM:**            **For WISHTOYO FOUNDATION/**
                                         **VENTURA COASTKEEPER:**
19

20

21   Date: 1/30/2012                  By _____
                                          Jason A. Weiner
22                                        Staff Attorney for Plaintiffs

23   ///

24   ///

25   ///

26

27

28

315753                                   71
                         PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
                                   AND STIPULATED DISMISSAL

**APPROVED AS TO FORM:**          **For HEAL THE BAY, INC.:**

Date: Jun. 27, 2012              By Christopher Sproul
                                 Christopher Sproul
                                 Environmental Advocates


Judgment is hereby entered in accordance with the foregoing Consent Decree this
30th day of March , 2012.

                                 The Honorable George King
                                 United States District Judge

PROPOSED TERTIARY TREATED FLOWS CONSENT DECREE
AND STIPULATED DISMISSAL